(COMMON LAW.)

## MANDEVILLE v. WELCH.

Bills of exchange and negotiable promissory notes, are distinguished from all other parol contracts by the circumstance that they are *prima facie* evidence of valuable consideration, both between the original parties, and against third persons.

Where a chose in action is assigned by the owner, he cannot interfere to defeat the rights of the assignee in the prosecution of a suit brought to enforce those rights.

It makes no difference, in this respect, whether the assignment be good at law, or in equity.

But this doctrine only applies to cases where the entire chose in action has been assigned, and not to a partial assignment.

ERROR to the Circuit Court for the district of Columbia. This was an action of covenant brought by the plaintiff, James Welch, for the use of Allen Prior, against the defendant Mandeville, one of the firm of Mandeville & Jamesson, for the breach of certain articles of agreement set forth in the declaration. Several pleas were pleaded by the defendant; but as the opinion of this Court turned altogether upon the fourth set of pleadings, on which issue was joined, and at the trial a bill of exceptions taken, it is unnecessary to state the other pleadings.

The fourth plea alleged a release of the cause of action by the plaintiff before the commencement of the present suit. The plaintiff replied, in substance, that Welch being indebted to Allen Prior, in a sum exceeding 8,707 dollars and 9 cents, and Mandeville

& Jamesson being indebted to Welch by virtue of the covenant in the declaration mentioned, in the same sum of 8,707 dollars and 9 cents, Welch did, in the year 1799, appropriate, assign, and transfer to Prior, by a good and sufficient assignment in equity, the same debt due by reason of the same covenant, of which appropriation and assignment to the use and benefit of Prior, Mandeville, afterwards, in 1799, had notice ; that the present suit was brought for the sole use and benefit of Prior, and Mandeville, at its commencement, had notice thereof, and knew the same suit was depending for the use and benefit of Prior at the date of the pretended release ; that the release was obtained without the knowledge, consent, or approbation of Prior, or of his attorney in Court ; and that Welch had no authority from Prior or his attorney, to execute the release, which was known to Mandeville at the time of the release; and that the release was made with the intent to defraud Prior, and to deprive him of the benefit of this suit. To this replication there was a rejoinder and issue, upon which the parties went to trial.

At the trial, the plaintiff, to prove that Welch did transfer and assign to Prior, by a good and sufficient assignment in equity, the debt in the replication mentioned, gave in evidence to the jury the articles of agreement in the declaration mentioned, and sundry endorsements of payments thereon, and a memorandum also thereon, dated the 1st of January, 1798, and signed by Welch, stating that there then remained owing to him, on the articles payable at the times therein mentioned, the sum of 8,707 dollars and 9

cents. The plaintiff further offered three bills of exchange drawn by Welch, in favour of Prior, upon Mandeville and Jamesson, dated on the 7th of September, 1799, each for 2,500 dollars, payable to Prior or his order: one on the 24th of November, 1800, another on the same day and month, 1801, and the third on the same day and month, 1803, being the respective times at which certain instalments for like sums would become due on the articles of agreement stated in the declaration. Each of these bills purported to be " for value received" of Prior, and were directed to be charged " to account as advised." The plaintiff farther offered in evidence to the jury an account rendered to Welch by Mandeville & Jamesson, dated the 31st of January, 1798, stating the balance of 8,707 dollars and 9 cents, due to Welch, and payable by instalments in the manner mentioned in the articles of agreement; and proved that this account had been delivered to Prior by Welch.

The defendant then gave in evidence the bill and proceedings in a suit in Chancery in Fairfax county, by Prior, against Welch & Mandeville & Jamesson, (excepting the answers of the latter,) which suit was brought to recover the amount of the three bills of exchange from Mandeville & Jamesson, as debtors of Welch, and was discontinued by the plaintiff, Prior, after the answer of Welch had come in, denying that Prior was owner of the bills, and asserting that Prior held them merely as his agent, and for his use. And the defendant further proved, that Welch had never authorized the present suit to

be brought, unless the circumstances above stated would have given Prior authority to institute the same.

The defendant then prayed the Court to instruct the jury, that if from the evidence so given, they should be of opinion, that the sums for which the bills were drawn amounted to less than the sums payable by Mandeville & Jamesson to Welch, under the covenant, and were known to be less by Welch, then Prior is not such an assignee of the covenant as would authorize him to sustain this suit in the name of Welch. Which instruction the Court gave; but further instructed the jury, that if they should be of opinion, from the evidence, that the bills were drawn for the full and valuable consideration expressed on the face of them, paid by Prior to Welch, and if there was no other evidence than what is before stated, they ought to infer from the evidence, that Prior was, and is such an assignee of the right of action upon the covenant as authorized him to sustain this action in the name of Welch's administrator (Welch having died pending the proceedings, and his administrator having been made party to the suit) for the whole debt due by the covenant at the time of Welch's delivering the account above stated to Prior; and further, that the bills were *prima facie* evidence of such value having been paid by Prior to Welsh. The jury found a verdict for the plaintiff under this instruction; and the cause was brought before this Court by a writ of error, to revise this among other supposed errors assigned upon the record.

being *prima facie* evidence of an equivalent advance by Prior, the possession by him of the articles of agreement, and the delivery to him of the account signed by Mandeville & Jamisson, furnish a legal presumption that both were delivered as security for the payment of the advance.   He thus acquired a lien on them similar to that acquired by the delivery of title deeds as security for a debt, which lien has always been deemed by Courts of Equity equivalent to a mortgage.*   So, also, the deposit of a note or bill, as security for a debt, entitles the creditor to enforce his lien *in* equity.*  But supposing this position not to be correct, still it is contended, that there was here a partial lien or appropriation of the debt due from Mandeville & Jamesson under the articles, to the extent of the sums due on the bills, which is sufficient to authorize Prior to maintain this action. The drawing of a bill of exchange is, in itself, an assignment by the drawer to the payee of the money due from the drawee.   The acceptance is not necessary to make the assignment complete, but only to give an action against the drawee in the name of the payee.*   In the case of Clark v. Adair, cited by Mr. Justice Buller in Masters v. Miller,* it was determined

1820.

Mandeville
v.
Welch.

a. Sweas v. Camelford, 1 *Vez. Jun.* 235.   Walwyn v. Sheppard's Assignees, 4 *Ves.* 119,   Jones v. Gibbons, 9 *Ves.* 411. *Ex parte* Langston, *Rose's Rep.* 26.   Russel v. Russel, 1 *Bro. Ch. Cas.* 269.

b *Ex parte* Crossbey, 3 *Bro. Ch. Cas.* 237.   *Ex parte* Byas, 1 *Atk.* 148.

c Gibson v. Minet, 1 *H. Bl.* 569. 602,   Tatlock v. Harris, 3 *T. R.* 174.

d 4 *T. R.* 343.

1820.

Mandeville
v.
Welch.

that an unaccepted bill was such an assignment as entitled the payee to the money. In Yeates v. Groves,[a] an order to pay out of a particular fund, though not accepted, was considered such a transfer as to prevent the assignee of the party who became bankrupt after drawing the order, from claiming the fund on which the order was drawn.

*March 7th.*

Mr. Justice STORY delivered the opinion of the Court. Two questions arise upon the instruction to the jury: 1. Whether the bills were *prima facie* evidence that value had been paid for them by Prior to Welch? 2. Whether, under all the circumstances of the case, Prior was an assignee in equity entitled to maintain the present action?

*Bills and negotiable notes are prima facie evidence of value received, both between the original parties and third persons.*

Upon the first point, we are of opinion, that the law was correctly laid down by the Court below. The argument of the defendant's counsel admits, that where a bill imports on its face to be for " value received," it is *prima facie* evidence of that fact between the original parties; but it is stated, that it is not evidence of the fact against third persons. We know of no such distinction. In all cases where the bill can be used as evidence either against the parties, or against third persons, the same legal presumption arises of its having been given for value received, as exists in relation to a deed expressed to be given for a valuable consideration. In this respect, bills of exchange, and negotiable notes, are

1 *Vez. Jun.* 280.

distinguished from all other parol contracts, by authorities which are not now to be questioned.[a]

1820.

Mandeville
v.
Welch.

The other question requires more consideration, though it does not in our judgment present any intrinsic difficulty.    It has been long since settled, that where a chose in action is assigned by the owner, he shall not be permitted fraudulently to interfere and defeat the rights of the assignee in the prosecution of any suit to enforce those rights.    And it has not been deemed to make any difference whether the assignment be good at law, or in equity only. This doctrine was fully recognized by this Court when this case was formerly before us.[b]    It was then applied to a case, where the whole chose in action was alleged to have been assigned ; and it was certainly then supposed that the doctrine in Courts of law had never been pressed to a greater extent. We are now called upon to press it still farther, so as to embrace cases of partial assignments of choses in action.

*The assignor of a chose in action cannot interfere in a suit brought by the assignee so as to defeat his rights.*

It is contended on behalf of the plaintiff, in the first place, that the facts of this case establish by legal inference, that the articles of agreement were entirely assigned in equity to the plaintiff.   If this ground fails, it is in the next place contended, that an assignment was made of the debt due by the articles to the extent of 7,500 dollars, the amount of the bills drawn on Mandeville & Jamesson, and that

---

a  *Chitty on Bills,* (2d edit.) 12. 62. 1 *Wils. Rep.* 189.  *Burr.* 1516.   *Salk.* 25.   1 *Bos. & Pull.* 651.

b  Welch v. Mandeville, 1 *Wheat. Rep.* 235.

1820.

Mandeville
v.
Welch.
Equitable
mortgage cre-
ated by a de-
posit of title
deeds.

this, *per se*, authorizes Prior to sustain the present action.

In support of the first position, it is argued, that the bills being *prima facie* evidence of an equivalent advance made by Prior, the possession by the latter of the articles of agreement, and the delivery to him of the account signed by Mandeville & Jamesson, afford a legal presumption that the articles and account were delivered to him as security for the payment of such advance, and thereby he acquired a lien on them like that acquired by the delivery of title deeds as security for a debt, which lien has always been deemed to be equivalent to an equitable mortgage. It may be admitted, that according to the course of the authorities in England, and as applicable to the state of land titles there, a deposit of title deeds does, in the cases alluded to, create a lien, which will be recognized as an equitable mortgage, and will entitle the party to call for an assignment of the property included in the title deeds. It may also be admitted, that a deposit of a note not negotiable, as security for a debt, will entitle the creditor, after notice to the maker, to enforce in equity his lien against the depositor, and his assignees in bankruptcy. Such was the case cited at the bar from Atkyn's Reports.[a] But in cases of this nature, the doctrine proceeds upon the supposition, that the deposit is clearly established to have been made as *security* for the debt; and not upon the ground that the mere fact of a deposit unexplained affords such proof. In

---

[a] *Ex parte* Byas, 1 *Atk.* 148.

the case at the bar, it was not proved that the articles were delivered by Welch to Prior at all, much less that they were delivered as security for the bills. The delivery of the account is certainly an equivocal act, and might have been as a voucher of the right of Welch to draw on Mandeville & Jamesson. There is this farther deficiency in the proof, that the bills do not appear ever to have been presented to the drawees for acceptance, which not only rebuts the presumption from the face of the bills that they were received for value, since a *bona fide* holder could not be supposed guilty of such fatal laches ; but draws after it the auxiliary presumption, that they were in the hands of Prior as agent, and, therefore, that he had not any assignment of the articles as security. And it may be added, that the suit commenced in Chancery by Prior, for this very debt, and, afterwards, discontinued, does not assert any assigned title in himself, but proceeds against Mandeville & Jamesson, as the mere debtors of Welch. Under such circumstances, this Court cannot say that the instruction of the Circuit Court was correct, that the jury ought to infer, that Prior was an assignee, entitled to sue for the whole debt due upon the articles.

The ground, then, that there was a deposit of the articles as collateral security, failing, we are next led to examine the position of the defendant's counsel, that there was a partial lien or appropriation of the debt due from Mandeville & Jamesson, under the articles to the extent of the sum due on the bills, which is equivalent to an equitable assignment of so

A bill of exchange is an assignment to the payee, of the debt due from the drawee to the drawer.

much of the debt. It is said, that a bill of exchange is, in theory, an assignment to the payee of a debt due from the drawee to the drawer. This is undoubtedly true, where the bill has been accepted, whether it be drawn on general funds, or a specific fund, and whether the bill be in its own nature negotiable or not; for in such a case, the acceptor, by his assent, binds, and appropriated the funds for the use of the payee. And to this effect are the authorities cited at the bar.[a] In cases also where an order is drawn for the whole of a particular fund, it amounts to an equitable assignment of that fund, and after notice to the drawee it binds the fund in his hand.

But this principle does not apply to a partial assignment of the fund.

But where the order is drawn either on a general, or a particular fund, for a part only, it does not amount to an assignment of that part, or give a lien as against the drawee, unless he consent to the appropriation by an acceptance of the draft; or an obligation to accept may be fairly implied from the custom of trade, or the course of business between the parties as a part of their contract. The reason of this principle is plain. A creditor shall not be permitted to split up a single cause of action into many actions, without the assent of his debtor, since it may subject him to many embarrassments and responsibilities not contemplated in his original contract. He has a right to stand upon the singleness of his original contract, and to decline any legal or equitable assignments by which it may be broken

a Yeates v. Groves, 1 Ves. jun. 280. Gibson v. Minet, per Eyre, C. J. 1 H. Bl. 569. 602. Tatlock v. Harris, 3 T. R. 174

Mr. *Swann*, and Mr. *Taylor*, for the plaintiffs in error, argued, 1. That the Court below erred in its instruction to the jury that the words " value receiv-ed" were evidence against Mandeville & Jamesson, that money had been actually paid by Prior to Welch, or the bills. They do not claim under the bills, nor under Welch as the drawer. They claim as as-signees of the fund on which the bills were drawn; In the case of Evans v. Beatty,[a] Lord Ellenborough held, that on a guaranty to pay for goods sold to a third person, the declarations of the latter were not evidence to charge the person giving the guaranty; because there might be collusion between the third person and the plaintiff. So in this case, if the de-fendant proved an assignment to him, Welch's de-claration that he had previously assigned to the plain-tiff, would not be admissible, and his declaration *in writing* cannot have any greater effect. 2. It was not the intention of Welch, and of Prior, that the whole covenant should be assigned, nor does the law imply such an assignment. The bills are general, not pay-able out of any particular fund, and there is no proof of any agreement between Welch and Prior, that the latter should have a lien on the funds in the hands of Mandeville & Jamesson. The legal consequence of the decision of the Court below is, that the drawing of a bill of exchange amounts, *per se*, to an assignment in law of the funds of the drawer in the hands of the drawee, so as to authorize a suit in the name of the drawer, without his consent, against

a 5 *Esp. N. P. C.* 26

the drawee, and when recourse might be had to the former. There is no case to support the idea that the drawing of a bill under any circumstances, will amount to an assignment at law. Cases, indeed, have occurred, where, under peculiar circumstances, a Court of Equity has considered the drawing of a bill as giving to the payee a superior claim or equitable lien. Thus, in the case of Yeates v. Groves,[a] the creditor surrendered a security he held, under an express agreement that he should be paid out of the money to arise from a particular specified fund, on which the bill was drawn, and the drawer became bankrupt. But the proposition, that the drawing of a bill on a specific fund would, *per se*, have created such a lien, is repelled by Lord Thurlow. It would be highly impolitic to consider the drawing of a bill, under any circumstances, as amounting to an assignment, or creating a lien, in a Court of law. These questions generally arise on the bankruptcy of the drawer. His general creditors have an interest, and ought to be heard. They cannot be made parties to a suit at law.

Mr. *Jones* and Mr. *Lee*, contra, insisted, 1. That bills and negotiable notes expressing upon their face " value received," are evidence of that fact, both as between the original parties, and against third persons. 2. The facts and circumstances of the case establish by legal inference, that the articles of agreement were wholly assigned in equity. The bills

a 1 *Vez. Jun.* 280.

into fragments. When he undertakes to pay an integral sum to his creditor, it is no part of his contract that he shall be obliged to pay in fractions to any other persons. So that if the plaintiff could show a partial assignment to the extent of the bills, it would not avail him in support of the present suit. But, in the present case, there is no proof of any presentment of the bills, much less of any acceptance by the defendant to establish even a partial assignment of the debt. And if there were, it would still be necessary to show that there was an assignment of the articles as an attendant security, before the plaintiff could found his action upon them. Indeed, by the very terms of the pleadings, the plaintiff undertakes to establish an assignment of the whole debt due by the articles; and if he fails in this, there is an end to his recovery. So that, in whatever view we contemplate the facts of this case, or the law applicable to it, the plaintiff has not shown any sufficient title to sustain his replication to the fourth plea.

Several other objections have been taken at the bar to the plaintiff's right of recovery, which under other circumstances would have deserved serious consideration; but, as upon the merits of the case, as they are apparent upon the record, the judgment of this Court is decidedly against the plaintiff, it is unnecessary to give any opinion upon those objections.

Judgment reversed.

JUDGMENT. This cause came on to be heard on

the transcript of the record of the Circuit Court for the District of Columbia in the county of Alexandria, and was argued by counsel. On consideration whereof, this Court is of opinion that the said Circuit Court erred in instructing the jury, " that if they should be of opinion, from the evidence, that the said bills were drawn for the full and valuable consideration expressed on the face of them, paid by the said Prior to the said Welch, and if there be no other evidence than what is herein before stated, they ought to infer from the said evidence, that the said Prior was, and is such an assignee of the right of action upon the covenant aforesaid, as authorizes him to sustain the action in the name of the said Welch's administrator for the whole debt due by the said covenant, at the time of the said Welch's delivering the said account to the said Prior." It is, therefore, ADJUDGED AND ORDERED, that the judgment of the said Circuit Court in this case be, and the same is hereby reversed and annulled. And it is further ORDERED, that the said cause be remanded to the the said Circuit Court, with directions to issue a *venire facias de novo*.