JOSEPH SLOAN v. JESSE SOMMERS.

This court will not permit a mere nominal plaintiff to release the action, or to enter a retraxit, without the knowledge or consent of the real plaintiff. If a third person has a bona fide right or interest in a suit, which the court can protect, it will do so; and this whether the assignment be good at law, or in equity only.

No subsequent taking, or agreement to take illegal interest, will invalidate a bond or other security originally free from corruption; and this has been the uniform construction given to the second section of the act against usury. *Rev. Laws,* 269

————

This action was brought on a promissory note, purporting to have been made by the defendant, bearing date the 23rd of April, 1816, for $1,716 50, payable to the plaintiff or order, 545 days after date. The declaration, besides a count on the note, contained the usual money counts. The cause was tried upon the general issue, at the Gloucester Circuit in March, 1828, and the jury rendered a verdict for the plaintiff for $694 50. Upon the coming in of the postea, the plaintiff moved for, and obtained a rule to show cause why the verdict should not be set aside, and a new trial granted. In the Term of February, 1830, and while the rule to show cause was pending, Sloan, the plaintiff on the record, came into court, and entered in the minutes a retraxit of the suit. This was done without any application to the court, or any order of the court for leave to do so. As soon as this was discovered, and during the same term, the counsel for the plaintiff suggested to the court, that Thomas Astley was the Assignee of the note in question, and the real plaintiff in the suit, and in his behalf moved for, and upon facts then shown to the court, obtained a rule to show cause, why the retraxit should not be expunged from the minutes, or otherwise vacated.

The argument of these rules came on together. The counsel for the defendant declined arguing against the motion for a new trial, and expressed himself desirous that there should be one, in the event of the retraxit being set aside, if in the opinion of the court a new trial ought to be granted.

*The Attorney-General,* and *S. L. Southard* for the plaintiff.

*Wall* for defendant.

The opinion of the court was delivered by

HORNBLOWER, C. J. It appears that on the 23rd of April, 1816, Sloan had two notes purporting to have been made by Sommers: viz. the note in question, and another for the same amount, payable at an earlier day. Both of these notes were indorsed by Sloan to Astley, for the purpose, when paid, of

being applied towards the satisfaction of certain securities held by Astley against Sloan. Astley indorsed the notes as usual, and deposited them for collection in the Camden Bank. When the first note came to maturity, it was paid off and taken up by Sommers; with the exception of some interest due thereon, which the officer of the bank had neglected to receive. But when the second note (which is the note in question) became due, Sommers refused to pay it, saying, he had given but one note, and that either the one he had paid, or this one, was forged or fraudulent. Upon this Astley struck his name off of the note, and returned it to Sloan, who put it in the hands of J. L. Nugent, Esq., then an attorney of this court, with instructions to commence a suit upon it against Sommers.

On the 23rd of May, 1818, and after this suit had been commenced, Sloan addressed an order or a letter to Mr. Nugent, his attorney, saying, that for value received, he had assigned to Mr. Astley his right and interest to the note, and directing his attorney to enter on his docket that the proceeds were to be for the use of Astley, and to be paid to him, and further instructing his attorney, to pay over the money, when recovered, to Astley. This letter was delivered by Sloan to Astley, and the latter gave him a receipt therefor; promising to apply the money when received, towards the payment of certain bonds he then held against him. Astley immediately transmitted to J. L. Nugent, the letter addressed by Sloan to him, reserving the copy or duplicate, whichever it may be called, as appears by an original letter from Nugent to Astley, dated the 25th May, 1818, acknowledging the receipt of Sloan's letter. I have not stopped to consider the objections that were made at bar to the admissibility of some of the documentary evidence from which the foregoing particulars have been collected; because, whatever right the defendant has to controvert the facts stated, (and that I shall consider by and by,) Sloan cannot dispute them. In his answer to the bill filed by Sommers, for an injunction in this very case, he says, that the note after it had been protested for non-payment, was sent by Astley to J. L. Nugent, by whom a suit was commenced upon it in his name, but *for the use of Astley.* Then, as between Astley and Sloan, there is the clearest evidence that Sloan was only a trustee, a mere nominal plaintiff.

To permit Sloan under these circumstances, to release the action, or to enter a retraxit, (which is equivalent to a release, *Beecher's case*, 8 *Co.* 115,) without the knowledge or consent of the real plaintiff, is what this court never will do. If a third person has a bona fide right or interest in a suit, which the court can protect, it will do so. In *Canan* v. *Admr. of Ely, Coxe Rep.* 3, this court set aside a judgment, upon the application of the heir at law. In *Wardell* v. *Eden, Colem cas.* 137, a satisfaction of a judgment entered of record by the plaintiff, was vacated, on motion in behalf of an assignee of the judgment. Kent, Justice, in that case, (see 1 *Johns. Rep.* 531, in a note,) says, " the assignee of the judgment is to be recognized by this court as *the owner*, and all acts of the plaintiff subsequent to the assignment, and affecting the validity of the judgment, were fraudulent. He has no more power over the judgment than a stranger." In *Welch* v. *Mandeville*, 1 *Wheat.* 233, the plaintiff came into court and entered on the record, these words, " *This suit is dismissed, agreed.*" Story, Justice, who delivered the opinion of the court in that case, remarked, that the dismissal thus entered, was certainly not a *retraxit*, but adds, that if it had been, it would not have availed the parties, unless it was *bona fide*, and not done for the purpose of defeating the rights of third persons. The general doctrine is fully established by the Supreme Court of the United States, in the case just cited, that " courts of law, following in this respect the rules of equity, now take notice of assignments of choses in action, and exert themselves to afford them every support and protection, not inconsistent with the established principles and modes of proceeding, which govern tribunals acting according to the course of the common law." The same doctrine was before that time recognized in that court, in the case of *Winchester* v. *Hackly*, 2 *Cranch*, 342 ; and again in *Mandeville* v. *Welch*, 5 *Wheat.* 277 ; which came before the court a second time in 1820. See also *Paine* v. *Rogers, Dougl.* 391 ; *Winch* v. *Keeley*, 1 *T. R.* 619 ; *Marter* v. *Miller*, 4 *T. R.* 340 ; *Legh* v. *Legh*, 1 *Bos. and Pul.* 447 ; *Littlefield* v. *Story*, 3 *Johns. Rep.* 425 ; *Andrews* v. *Beecher*, 1 *Johns. cas.* 411 ; *Raymond* v. *Squier*, 11 *Johns. Rep.* 47 ; *Tuttle* v. *Bebee*, 8 *Johns. Rep.* 152.

The principle that courts of law will take notice of a trust,

and consider who is beneficially interested, has become so familiar at Westminster Hall, and in the courts of this country, that it is scarcely worth while to cite authorities; but I am not aware of any reported case in this court, in which the point has been distinctly raised, or the cases referred to.

It only remains to inquire, whether there are any circumstances in the case that entitle the defendant Sommers to the consideration and protection of the court in this matter. In the first place, it is insisted by his counsel, that he had no notice of the assignment. It must be admitted, if the fact is so, and the defendant, dealing with Sloan in good faith, has paid him money, or entered into any engagements with him, as a consideration for retracting the suit, the motion cannot be granted. But there is no evidence before the court of any such payment, or other consideration passing from the defendant to Sloan. It is true the defendant says in his own affidavit, he had compromised the suit with Sloan, in which it was agreed that Sloan should *retract*, and that he, Sommers, has fulfilled his part of the compromise. But he does not tell us what the compromise was, nor that he either did or suffered any thing as a consideration for the retraxit. Nor has Sloan in his affidavit, which was also read by the defendant's counsel, said one word about the agreement between him and Sommers, in relation to the retraxit, or that he received any consideration therefore. So far, then, as the question of notice is involved, it does not appear that Sommers has been injured for the want of it. He will be in statu quo, and has no right to complain.

It is therefore unnecessary to inquire into the question of notice, though if it was material to do so, I think there is abundant evidence that Sommers was acquainted with the fact. The answer of Sloan to his bill, relating to this very note, and suit, informed him distinctly, that the suit was prosecuted by Astley, in his name, for the use of Astley.

But it is objected, secondly, That the assignment was not absolute, but only as collateral security for a previous debt due from Sloan to Astley, and that it was made pending the suit. But Astley, it must be admitted, had an equitable right to the avails of the suit, and Mr. Justice Story, in delivering the opinion of the court, in *Mandeville* v. *Welch*, 5 *Wheat.* 283, says,

that "it makes no difference whether the assignment be good at law or in equity only;" and in *Winch* v. *Keeley,* 1 *T. R.* 623, Ashurst, Justice, said, "if it is once established that this court will take notice of a trust, it is immaterial whether the person who sues, was originally a trustee, or afterwards became so."

If, indeed, the assignment is only of a part of the debt, the assignee cannot maintain an action for it in the name of the assignor. The reason for this is obvious, and it is given in *Mandeville* v. *Welch,* 5 *Wheat.* 286; " a creditor shall not be per mitted to split up a single cause of action, into many actions, without the assent of his debtor." " He has a right to stand upon the singleness of his contract, and to decline any legal or equit-able assignments, by which it may be broken into fragments. When he undertakes to pay an integral sum to his creditor, it is no part of his contract, that he shall be obliged to pay in frac-tions to any other person." But the case at bar, does not fall within this objection. The debt due from the assignor to the assignee, was at the time of the assignment, if it is not now, greater than the sum claimed of the defendant. Be that as it may, this was in no sense, a partial assignment. It transferred the entire debt, the whole cause of action, and if in the event, the proceeds should be more than to satisfy Astley, he would be a trustee for the owner of the residue. If the whole debt should be liquidated by Sloan, at any time pending the suit, this court, with the consent of Astley, or without such consent, on proof of the fact and notice to him of the application, will permit a dis-continuance or retraxit to be entered. But thirdly, the defend-ant's counsel insisted, that the debt was extinguished; first, by reason of Astley's having taken usurious interest; secondly, by his purchase at a sheriff's sale, of Sloan's property, *subject* to his mortgage for the debt due him from Sloan.

The first branch of this objection is without foundation. It is not pretended that unlawful interest was reserved by the original contract between Sloan and Astley; but it is said, he has "taken" unlawful interest on the bonds. It is true, our statute, *Rev. Laws.* 269, *sec.* 2, says, "that all notes, bills, bonds, &c. on which a higher interest is reserved, or *taken,*" shall be utterly void.

But these words, "reserved or taken," are found in all the

British statutes from the time of 21 *James* I. *c.* 17, to this time; and under them all, it has been uniformly held, that no subsequent taking, or agreement to take illegal interest, will invalidate a bond or other security originally free from corruption. *Ferral* v. *Shaen*, 1 *Saund.* 295, *& n.* 1 ; *Comyn Trea. on Usur.* 71, *sec.* 3, and cases there cited. Without then enquiring whether Astley's mode of calculating and compounding the interest was usurious or not, the obligations remain in force, even if he has incurred the penalty threatened by the third section of our act.

The only remaining question is, whether the purchase by Astley, of the equity of redemption of the mortgaged premises, was an extinguishment at law, of the securities?

In the case of *Cattel* v. *Warwick*, 1 *Halst.* 190, it was decided by this court, that such a purchase did not cancel the bond accompanying the mortgage. But whatever may be thought of that decision, it is not necessary to rely upon it as an authority in this case; for, by the affidavit of Sloan which the defendant has produced in court, it sufficiently appears that both Astley and himself considered the debt as still subsisting, and the premises redeemable by Sloan. No settlement has ever taken place between them, so far as we know.

The court are therefore unanimously of opinion, that the *retraxit* ought to be expunged and vacated, with the costs of this motion to be paid by Sommers; inasmuch as he has made himself a party to this matter by opposing the motion. The rule to shew cause why there should not be a new trial, must also be made absolute. The reasons for doing so are too palpable to require any argument. This however, must be done on payment of costs to the defendant.

Both rules absolute.

CITED in *Allen* v. *Pancoast, Spencer* 71 ; *Parsons* v. *Woodward*, 2 *Zab.* 206 : *Donnington* v. *Meeker*, 3 *Stock.* 366 ; *Ware* v. *Thompson's adm'r.*, 2 *Beas.* 67 ; *Smith* v. *Hollister*, 1 *McCar.* 155 ; *Walter* v. *Lind*, 1 *C. E. Gr.* 453 ; *Melick* v. *Melick's Exr.* 2 *C. E. G.* 159.