Judge Ewing
delivered the Opinion of the Court.
Abner Holton and Wife brought a suit in chancery against John M. Blackerby, the administrator of Jeduthun Blackerby, deceased, for a settlement and distribution of the estate of the deceased, among his five heirs and distributees; of whom Holton’s wife was one, and John M. Blackerby, William O. Blackerby, Judith Blackerby, and the wife of John Pearl, the others.
Pending the suit, John M. Blackerby, the administrator, died, having made his will, by which he made William O. Blackerby his executor, and devised and bequeathed all his estate to him, except a small pecuniary legacy which he left to his niece, Helen Miller, wife of James B. Miller.
The suit was revived, and a decree rendered in favor of Holton and wife, against William O. Blackerby, as residuary devisee and executor of J. M. Blackerby, and also in favor of Judith Blackerby, against the same. With this decree each party being dissatisfied, William O. has prosecuted an appeal, and each of the others a cross writ of error.
Several preliminary questions are raised by the counsel for William O. Blackerby, which will be first noticed.
First. It is contended that Abraham Patterson, one of the sureties of the administrator, in his administration bond, should have been brought before the Court.
The relationship between the parties, is sufficient to uphold a deed, made in consideration of love and affection, from a husband and his wife, to the husband of her sister.
Tho’ a chose in action is not assignable at common law, a court of equity will uphold the assignment, as being the declaration of a trust; and will enforce the claim assigned, by suit in the name, as well as for the benefit, of the assignee, as the cestui que use. And courts of law, though they do not (independent of statutes) recognize any transfer of the legal title, will pretect the rights of the assignee, against any other party, having notice, express or implied, of the transfer.
The decree has been rendered against William O. Blackerby alone, and not against the sureties of his testator. It was certainly competent for the complainant to proceed against the administrator, or his representative alone, without joining his sureties, or he might have proceeded against both. But, if he joined the sureties in the proceedings, it was proper to bring them all before the Court, that they all might be made to bear the burthen equally, and to contribute among one another. But, though an attempt be made to join the sureties in the proceeding, and some of them be brought before the Court, if the decree, as in this case, is not rendered against any of them, the administrator, or his representative, has no right to complain, as he alone may be made responsible without joining any of the sureties.
Second. It is contended that the Court erred in decreeing the interest of Pearl and wife to Holton, because the deed from Pearl and wife is without consideration, and champertous.
It seems that Pearl and wile, after the commencement of the suit by Holton, for and in consideration of the the love and affection which they bore to Holton, transferred, by deed, all their interest in the personal and real estate of their deceased parent to him, except that which they had before received, and a certain tract of land therein designated. And, in their answer to Holton’s bill, they recognize and confirm the transfer, and desire the Court to decree the amount to the complainant.
The relationship existing between the parties is a sufficient consideration to support the deed, especially for the personalty, and nothing else passed by it, as will hereafter appear.
We are equally clear that there is nothing on the face of the deed, or in the record, subjecting it to the imputation of champerty as to the personalty, upon which alone, by the decree, it has been permitted to operate.
The acceptance of the transfer of a chose in action, not made to obtain aid in upholding and prosecuting a suit upon it, is not maintenance.
A party prosecuting a suit upon his own right, may extend his interest in the thing sued for, by purchasing the interest of another in the same thing, without violating the laws against champerty and maintenance.
It is true, the subject matter of the transfer is a chose action, and, by the common law, a chose in action could not be assigned or granted over, as such transfers tended to champerty and maintenance, and the oppression of weak and ignorant, by passing things in action into the hands of the more powerful.
Courts of equity, however, considering that, in a commercial country, much property must lie in contract, have long assumed and exercised the power of noticing and of affording the same protection to a chose in action that courts of law have afforded to a chose in possession. And courts of common law, following the example set them by the other tribunal, though they do not admit that the legal title to property, thus conditioned, passes by the transfer or assignment, will now, and long have, exercised the power of protecting the rights of the assignee, against all persons, having either implied or express notice of the trust or assignment. 1 Maddock's Chy. 544, 545, 546, &c. Lord Carteret vs. Paschall, 3 Pr. Wms. 199; Welch vs. Mandeville, 1 Wheat. 235; 5 Wheat. 277, 283; Raymond vs. Squire, 11 John. 47; Andrews vs. Beecher, 1 Johns. Cas. 411; Briggs vs. Dorr, 19 Johns. Reps. 95; 12 Johnson, 344; 3 Johnson, 421; 2 Johnson's Cases, 121, and our own Reports, sparsim.
The assignment of a chose in action has been construed by the Chancellor to be a declaration of trust, that the thing assigned is for the use and benefit of the assignee, and he will protect the trust by decreeing the thing directly to the party holding the use in the same, without regard to the assignor, in whom the naked legal title still rests.
Nor does the assignment in question come within the denunciation of any of our statutes against champerty or maintenance. The consideration moving Pearl and wife to transfer, was not the council, aid or assistance of Holton in the prosecution of their suit; and, if it were, Holton was interested in the controversy, and had a right to afford his aid, council and assistance in the advancement of his own interests, without subjecting himself *523 to the charge of maintenance. Nor was he to receive a part of parcel of the thing in contest, as remunerations for his aid and assistance; But the consideration was love and affection, existing between those closely allied in affinity, and the transfer was at most a transfer or assignment of a chose in action, whereby the closely connected, undivided, interests of both were united in one person, who had already commenced suit, the issue of which would determine both cases and settle the claims of each.
A contract is not champertous, unless it embraces some agreement to allow part or parcel of the thing to be recovered, as a compensation for recovering it.
A distributee who has transferred all his interest to a co-distributee, without recourse, is a competent witness for the later.
An adm'r or ex'r is entitled to refunding bonds, before a decree for distribution is enforced against him: and the assignee of a share, must give such bond as would be required of his assignor.
A decree cannot extend to matters not in the pleadings. A decree for partition of land not designation in the bill, (for the settlement of an estate) cannot be sustained.
There may be a decree against an adm'r (as such) when there are no other deft's. But all the devisees must be brought before the court, if a decree is sought against any of them.
Third. It is contended that the Court erred in not rejecting the deposition of Pearl. We think otherwise, Pearl had, before his deposition was taken, transferred all is interest in the matters in controversy to the complainant, without recourse, and could not be the gainer or loser by the result.
Fourth. But we think the Court did err in decreeing in favor of the complainant, as to the interest of Pearl and wife, without requiring from them, or those holding. their interest, a refunding bond, as required by the statute. The bond of Holton, and wife only extends to the interest claimed by them as distributees, and does, not embrace the interest derived by them from Pearl and wife. As to it, he stands in no better condition than Pearl and wife; and, before he can coerce its recovery, he should be required to execute a similar bond of indemnity to that required by the statute, of his assignors.
Fifth. We also think the Court exceeded its powers in decreeing a partition of the tract of land. The tract decreed to be divided is not designated m the bill or amendments, nor is any partition of it sought, nor of any other land, other than the tract on which the decedent died, which is charged to have been conveyed to J. M. and Wm. O. Blackerby, for the use of their ancestor, and as paid for out of his funds.
Sixth. We also think, if Judith Blackerby will proceed and take her decree only against the personal representative of John M. Blackerby, deceased, on her cross bill, she may do so without bringing Helen Miller *524 and husband before the Court. But if she desires a decree against William O., as devisee, all the devisees should be brought before the Court.
A lunatic distributee made a defendant to a bill against the ex or of her father’s adm’r, for a settlement of the father’s estate, answered by her committee, and the answer, made across bill, showed that the adm r had been her committee, and had slaves &c. of hers in his hands, at the time of his death, and prayed for an account and settlement of that trust: it was erroneous to dispose of the cross bill, without decreeing the settlement prayed for. The proof being insufficient for the foundation of a final settlement and decree the matter should have been referred to an auditor, to take further proof and report. But the proceedings on this cross bill, should not delay other branches of the cause; they might progress to a final decree, while the cross bill was retained for further preparation.
The allegations and proofs as to the accounts adverted to, with suggestions, that a reference to an auditor, for proof to be taken & c. will be necessary.
*524 For these errors the decree of the Circuit Court must be reversed, on the appeal of Wm. O. Blackerby.
There is also a fatal error, to the prejudice of Judith Blackerby, for which the decree should be reversed, on her cross writ of error.
She was found to be a lunatic, and her estate and person committed to the care of J. M. Blackerby. On his death, E. W. Lynn was appointed her committee, and by him she answered the complainants’ bill; and, making her answer a cross bill, she prayed, not only a decree for her distributive share of her deceased father’s personal estate, but also the settlement of her accounts with William O. Blackerby. the representative of her former committee. The Court disposed of her cross bill without decreeing a settlement with her committee. In this the Court erred. Though there was no evidence in the record, which would enable the Court to make a final disposition of this branch of the case, yet there was enough to show that J. M. Blackerby had been her committee, and, as such, had the care of her person and her slaves to the value of eleven hundred and seventy five dollars, for some time before his death. The Court should, therefore, have appointed an auditor, to hear proof and audit the accounts, and make report to the Court, so as to enable the Court to make a final disposition of her case. If it be contended that this course was calculated to produce delay to the complainants’ case, in the settlement of the matter, with which they, or the matters involved in their bill, had no connection; it is answered that that delay was not at all necessary, as the matters involved in the complainants’ bill might have been disposed of, and the cross bill continued as to the committee’s accounts, without detriment to the rights of the parties.
But it is contended on all sides, that the decree is erroneous on the merits, as to the amount decreed. To ascertain which, and to enable the Court to determine whether the decree should be reversed on the cross writ *525 of Holton and wife, as well as to give directions, as far as the proof now before us will enable us to do, as to the further disposition of the case, upon the return of the cause to the Circuit Court, it will be necessary for us to look more minutely into the allegations and proofs. And we would remark, that a slight view has convinced us that full justice cannot be done without the intervention of an auditor, or the adoption of some other mode, by which proof may be made, and an inquiry had into some of the accounts and credits, which, though set up and shown to exist, are so imperfectly made out by proof, as to the amount, as to leave the Court entirely at a loss to know what sum to assume in their adjustment.
Certain allegations of the bill referred to, with opinions that the proof (not stated does not sustain them.
A son received money for his father, 20 years before the bill was filed, and the bill demands an account of it, as a debt due the father’s estate, not an advancement: the lapse of time alone justifies the presumption, that it was paid over, as alleged in the answer.
First. It is contended, on the part of the complainants, that John M. and William O. Blackerby received money from their father to purchase, for him, the land on which he died, and that they did purchase it, and take the deed in their own names, and now claim it as their They admit that the deed is taken in their names, own. but deny that it was purchased for their father, or with his money, or money advanced to them by him.
We think the proof is too weak and unsatisfactory to sustain this charge in the bill, in contravention of the positive denial of the answers. We cannot, therefore, upon the proof now before us, order a division of this land.
Nor can we, upon the proof now in the record, allow any thing for the money charged to have been received for wheat or flour raised on their father’s place in Mason county. The proof is indefinite as to the amount received, or applied to the purchase of the land; and, at best, consists of loose confessions alone, without designation of time or place when made, or the sum received.
Nor can we allow any thing, for the horses charged to have been taken down the river for sale, for his father, by John M. Blackerby. He admits that they were taken down and sold m 1808; but alleges that the mo *526 ney was paid to his father, on his return, without charge for freight. After so great a lapse of time, it being upwards of twenty years before the commencement of this suit, we must presume that the money was paid over, as it is charged against John M. as a debt, and not pretended to have been an advancement.
A citizen of this state, being entitled to effects which had belonged to his deceased father, in So. Ca. told his two sons, that if they would go and get them, at their cost, they might have them, and one of them, at the expense of both, did so: held that the value of the property, after deducting all expenses incident to its recovery, must be deemed an advancement to the two sons.
A son having collected $500, on account of his father, was directed by him, to use it in building a house: this sum (so far as it is not accounted for by the son, as adm’r,) must he considered as an advancement to the son, or sons, who owned the land on which the house was built.
*526 John M. and William O. Blackerby admit, in their answers that the former, in the year 1813 or ’14, visited South Carolina, and received from the estate of their grand-father, which had been left to their father, a negro man, whom he afterwards sold for five hundred dollars, and a horse worth one hundred dollars, and one hundred and twenty dollars in money; which sums were divided between them. But they deny that this property or money was received by way of advancement, but allege that it was received, upon a contract between them and their father, by which he agreed that, if they would go and bring the property to Kentucky, at their own cost and expense, that they might have it between them. And they contend that John M. did, at their joint cost and expense, go to South Carolina, and bring the property and money to Kentucky, and they divided it between them.
We cannot regard the sums thus received, in any other point of view than as an advancement to his two sons, subject to a deduction for the costs and trouble of as many trips to South Carolina, upon that business, if more than one trip shall be proved, as may have been necessary to receive the property and money, and bring them to this State.
We cannot believe that the proposition made to his sons, would have been made to a stranger. The motive to the proposition must have been the advancement of his sons.
Each of them should therefore be charged, as an advancement, with the one half of the sums so received, after the deduction aforesaid, together with a deduction for any sum that may be proved to have been expended out of their own pockets, in reclaiming the slave, when he ran away, if any was expended.
We are also satisfied, that John M. Blackerby received *527 five hundred dollars—the price for which Jane, a slave belonging to the deceased, was sold, and there is no evidence that any part of the amount has been paid over; but there is evidence tending to show, that he was directed by his father, to collect it, and apply it to erecting a dwelling house on his land. He has reported in the settlement of his accounts with the County Court, a charge against himself, of seventy dollars of this amount, and no more. He should also be charged with four hundred and thirty dollars-the balance of the amount, as a further advancement to him. But if it shall appear, in the further progress of this case, that the dwelling house has been erected on the land belonging to the two brothers, one half of the amount should be charged to each, as an advancement, as the interest of each is equally promoted by the application of the fund, and which was most probably so intended by the father.
The adm’r sold certain cattle which he claimed as his own: but held, upon the proofs, recited—that they were the property of his father, the intestate.
Certain stock was claimed by the adm’r, as being half his, half the property of the intestate: the evidence stated, & held that it does not justify the conclusion that more than half belonged to the intestate.
We also think, as the proof now stands, that John M. Blackerby should be charged with ninety dollars—the sum for which he sold beef cattle and a yoke of oxen, after the death of the decedent. These cattle seem to have been taken from the plantation on which the decedent died, and were probably raised there. Their ear marks are believed to be the same with the ear marks of the decedent’s other cattle, and one of the oxen is proven to have been purchased by the decedent. These circumstances raise a strong presumption, that they were the cattle of the decedent, which stands unrepelled by any proof tending to show property in John M. his son.
As the proof now stands, we cannot say that the decedent was entitled to more than the one half of the sheep and hogs left on the plantation at his death; or that John M. was not entitled to one half. It seems that he purchased, at different times, both sheep and hogs. Whether his purchases and their increase did not amount to half of the whole, or whether he purchased them with his own funds, and for himself, or as the agent and with the funds of his father, does not satisfactorily appear. We cannot therefore say, with the *528 proof in the present record, that he was entitled to the whole; and cannot, consequently, now raise any charge against John M. for the one half claimed by him.
A claim against the estate of the son, who was adm’r of his father, for the pro needs of certain property which he sold, in his fathers life time, with the circumstances proved in relation to it, stated; and held, that they are sufficient to show that the son had a right to the property.
Directions for stating and settling the accounts between the estate of the decedent and his administrator, and the ex’or of that adm’r, and with and among the heirs and distributees of the intestate.
It also appears that John M., in the lifetime of his father, sold hogs, wheat, and other articles of produce, raised on the farm, for which he received the money. But it is also in proof, that the farm belonged to him and his brother, and that he superintended the slaves of his father, worked the farm, and sold and laid out its proceeds in articles of necessity for the family; and there is also proof tending to show, that his father had agreed with the two boys, that if they would attend to the hands, support him and the family, and keep up the stock, that they should have the surplus. This was done, and we cannot say that the arrangement was so beneficial to them, or to John M., who attended to it, as to be regarded as an advancement, or to amount to more than a reasonable compensation to him, for his care, attention and trouble. We, therefore, do not feel warranted in the present state of proof, to make any charge against him on this account.
To the foregoing charges against John M. should be added the amount of the sale bill and money on hand at the death of the decedent, and the amount charged against the administrator, in his report of the sale bill, and the debts due the decedent, if any, and the amount of articles unsold, if any, in addition to those already noticed, after deducting from the sale bill the amount produced by the sale of the beds and bed furniture, if those articles have been divided and settled among the heirs—charging the heir, who may have received an excess in their division, over his part, with the amount; also, after deducting a reasonable per cent, upon the amount of sales and money on hand, as compensation for his services in the administration, as well as all sums properly paid out in the discharge of debts, funeral expenses, or for services rendered by others in the management of the estate.
To the debit against John M. thus produced, let the charge made against William O. in the foregoing opinion, together with the amount acknowledged by him in *529 his answer, as having been advanced to him, be added; also, let the advancements made to each of the heirs, together with the value of the slaves advanced and allotted to each of them, in the agreed division of slaves between them, be added to the aforesaid amounts, and the whole estate will be produced; which being divided by the number of heirs, will give the amount of the share of each heir, of the whole estate; from which, after deducting the amount of advancements and payments to each, together with the value of the slaves allotted to each, and other charges against each heir, if any, will give the amount which is yet due to each, as well as the amount yet chargeable against John M. and William O. Blackerby each, which should be decreed accordingly, decreeing to Holton the amount found due to Pearl and wife.
A county court settlement of an admr's accounts, made after the commencement of a suit in ch y for a settlement, is not regarded in the chancery suit.
Suggestions are made by this court, as to the settlement of an estate, which are not intended to be conclusive—as the proof may be changed after the return of the cause.
A pl‘tf in error, tho’ he may show that the decree, settling an estate, of which he complains, is erroneous—yet failing to show that a correct settlement would be better for him, the decree is not reversed on his we and he cannot recover, but must pay, costs.
The settlement with the County Court should not be regarded, as it was instituted after the commencement of this suit.
The foregoing views are presented to facilitate the settlement, but are not intended to be peremptory or conclusive, as the record, upon the return of the cause, may be made to assume a different aspect, by the introduction of new depositions, and the taking of new proof in parol before an auditor, to whom it certainly would be most appropriate to submit the case, before a final decree.
We cannot say that the amount decreed in favor of Holton and wife when tested by the aforesaid principles, would exceed the amount decreed them by the Circuit Court; but believe that it would fall short of it; therefore, the decree should not be reversed on the writ of error in favor of Holton and wife, as it cannot be said to be to their prejudice.
The decree of the Circuit Court, on the appeal of William O. Blackerby, is therefore reversed, and he is entitled to his costs on the same; and is also reversed on the writ of error in favor of Judith Blackerby, and she is entitled to her costs. And on the writ of error in favor of Holton and wife, they should pay the costs,