## OLIVER TRIPP *vs.* WILLIAM O. BROWNELL & others.

An order by a whaling seaman for the balance that may be due him on settlement of his voyage, made and delivered to the payee before the voyage commences, purporting to be for value received, and intended as security for future advances by the payee, addressed to the agent and owner of the whaling vessel, although not accepted by him, constitutes an assignment of such seaman's wages, and if advances are made upon it, it becomes irrevocable, and the assignor cannot maintain an action against the owners of the vessel for his wages.

ASSUMPSIT to recover the amount of the plaintiff's lay, as a mariner on board the whaling bark Envoy, of New Bedford. At the trial in this court, before *Metcalf*, J., at the April term, 1852, the following facts appeared :

The bark Envoy sailed in July, 1848. On the 8th of July, 1848, the plaintiff gave to Franklin P. Seabury an order, of which the following is a copy : " New Bedford, 7 mo. 8th, 1848. Please pay F. P. Seabury, or order, the balance that may be due me on settlement of my voyage in the Bark Envoy. Value received, and charge the same to the account of yours, &c., Oliver Tripp. To the owners of Bark Envoy, Wm. O. Brownell, Agent. Witness, F. W. Macomber." The plaintiff was discharged November 28, 1850, at San Francisco, and received from the master an order, of which the following is a copy : " Mr. Wm. O. Brownell, Dear Sir : Please pay to the order of Oliver Tripp his proportion of Bark Envoy's cargo, being one fortieth lay, he having been regularly discharged. Yours truly, Washington T. Walker, Master, Bark Envoy. San Francisco, November 28, 1850." Before the 1st of January, 1851, the plaintiff returned to New Bedford, and, on the 8th of January, gave to said Franklin P. Seabury an instrument, of which the following is a copy: " New Bedford, 1st mo. 8, 1851. To the owners of Bark Envoy, Wm. O. Brownell, Agent. Gentlemen: Having sold my voyage to F. P. Seabury for a fair consideration, I hereby authorize you to settle and pay over to said Seabury, or to his order, the net proceeds of my said voyage in Bark Envoy;

Tripp *v.* Brownell & others.

after deducting the owners' and captain's bills against me, and his receipt shall be a full discharge of all my demands against said ship and owners. Oliver Tripp. Witness, C. W. Seabury." Upon the back of this assignment was this indorsement, made by the agent: " Accepted, Wm. O Brownell, Agent."

C. W. Seabury, the subscribing witness, stated that he witnessed the execution by the plaintiff of the above paper, and that the indorsement on the back was signed by the said William O. Brownell; that the instrument was given to F. P. Seabury, (his father,) and had been since in his father's possession. Upon cross-examination, the witness testified that " he knew of no consideration at the time the paper was executed; that all he knew was what the plaintiff said to him at the time, and what he had heard his father say since : That Tripp said the reason the bill of sale was given was to make his father safe for what he had advanced to him, and to his family since his absence. He said he owed many debts, some right and some wrong, and he was afraid of having his voyage trusteed and all taken away, and he wanted to prevent the creditors from trusteeing in Brownell's hands. I do not know how much father's bill against him is. I could tell by looking at the books." This evidence, on cross-examination, was objected to by the defendants, but was permitted to be given. The plaintiff offered proof that on the 4th of April, 1851, a notice was served on the defendants, of which the following is a copy: " Wm. O. Brownell, Agent of Bark Envoy : You are forbidden to pay F. P. Seabury, or his order, any moneys due me, upon my voyage in said ship Envoy, on the balance order I gave said Seabury at the sailing of said ship in July, 1848, as the order was without value received, and only as a protection to said Seabury. Oliver Tripp. By his attorneys, Coffin & Barney. April 3, 1851."

The plaintiff contended that this notice was a revocation of the order signed by the plaintiff in July, 1848, and that the subsequent paper of January 8, 1851, was, in its legal effect, but an order or power to collect, which was also revoked by the act of the plaintiff.

32 *

The presiding judge ruled that, upon the evidence offered the plaintiff could not in law maintain the action, and a verdict was taken for the defendants.

If the rulings were correct, judgment was to be entered on the verdict; otherwise the verdict was to be set aside, the parties agreeing that if the plaintiff was entitled to recover, an assessor should be appointed by the court.

*T. G. Coffin*, for the plaintiff. 1. There is no pretence that any value was received by the plaintiff when he gave the order of July 8th, 1848. It is what is known in the whale fishery as a balance order. The consideration may always be inquired into between the original parties. *Mandeville* v. *Welch*, 5 Wheat. 277; *Walrad* v. *Petrie*, 4 Wend. 575; *Dugan* v. *Campbell*, 1 Ham. R. 115; *Barber* v. *Backhouse*, Peake, 61. So in an action against an acceptor. *Darnell* v. *Williams*, 2 Stark. 166; *Jones* v. *Hibbert*, 2 Stark. 304.

2. There was no consideration for the assignment or order in the case at bar; and the plaintiff called upon the defendants to prove any, and they proved none. They cannot, and this is a bar to the defence. *Ledger* v. *Ewer*, Peake, 216; *Russell* v. *Hill*, 20 Martin, 558; *Hill* v. *Buckminster*, 5 Pick. 391. It is the same to the objection between an acceptor and payee. *Carr* v. *Stephens*, 9 B. & C. 758; *Sparrow* v. *Chisman*, 9 B. & C. 241. In the case at bar, there was no consideration proved or suggested. This was a mere authority from the plaintiff to Seabury to receive the money, which was revoked before such reception.

*T. D. Eliot*, for the defendants. 1. The action should have been on the special contract of the shipping articles, and not in *indebitatus assumpsit*. 2 Greenl. Ev. §§ 103 and 104 (2.); *Hulle* v. *Heightman*, 2 East, 145. It is not within the excepted cases. *Baker* v. *Corey*, 19 Pick. 497; *Proprietors of Quincy Canal* v. *Newcomb*, 7 Met. 284.

2. The notice given by the plaintiff's attorneys, April 3, 1851, was not a revocation, and did not purport to be, of the instrument given to F. P. Seabury, dated July 8, 1848.

3. The instrument of the date of 1st month, 8th, 1851, is not a mere " order or power," but is a power coupled with an

interest, and not revocable in its nature. Story on Contracts, § 339; Story on Agency, § 476–7; Smith's Mercantile Law, 134 (*c*).

4. If it were revocable as between the original parties, still the defendants in the present case, who had accepted the assignment of the plaintiff's claim, and made payments in part to the assignee, are not exposed to a suit by the assignor, at least without tender of indemnity against the assignee.

SHAW, C. J. It seems to us clear that the direction of the judge was right, and that, under the circumstances stated, the plaintiff was not entitled to recover his lay, against his balance order or assignment, given to Seabury at the commencement of his voyage. This was an instrument known, as the counsel for the plaintiff say, to the whale fishery. It purports to be given for " value received," attested by a witness, and addressed to the managing agent, and, in this instance, we believe, and perhaps usually, one of the owners, and delivered to the party in whose favor it is drawn. It is probably not accepted, because at the commencement of the voyage there is nothing due, and perhaps nothing may ever become due. Indeed; strictly, by the usual terms of a whaling voyage, the lay, after the deduction from it of the advances made by the owners to the seamen on the voyage, is payable in oil, or other products of the voyage; though, by usage, it is most commonly converted into money by a sale, made by consent of those concerned, or by a satisfactory estimate, and the balance is actually paid in money.

We are, then, to inquire what is the legal character of such an instrument. It is not a promissory note negotiable or otherwise, and therefore the authorities in regard to want of consideration do not apply to it. It is certainly an authority to receive the seaman's lay, whether in money or oil. Perhaps the seaman, before anything has been advanced on the credit of it, by way of outfit or otherwise, might revoke it, and give notice thereof to the owners ; and, it being still a naked authority, he might defeat it. But if, at the time of giving the order, the holder had advanced him anything, or became responsible to pay or do anything for him, in his ab-

sence; or if, after his departure without revoking the author-
ity, the holder, in pursuance of any previous arrangement
with him before leaving, had made any advance to his family
or otherwise, it became an authority coupled with an interest,
and by law is not revocable. The holder, then, has a right to
recover the lay even against the express prohibition on the
part of the seaman. It is almost the same legal proposition,
stated in a little different aspect, that if, at the time such order
is drawn, it be understood and intended, between the parties,
to be regarded as a security for the payment of money, it be-
comes an assignment of the debt or chose in action, an as-
signment of the whole debt, the legal effect of which is, to
give a right to the assignee to collect and receive the whole
amount assigned, being accountable over to the assignor for
the surplus, if any, which may remain after applying it to the
satisfaction of the debt or obligation intended to be secured
It is called an "equitable" assignment, and it is so far an
equitable transfer only of the debt, that if the assignee have
occasion to go into a court of law, he must sue in the name
of the assignor, that the debtor may have the benefit of any
payment, or set-off, or other defence he may have against the
assignor. But it is so far a transfer of the right to the debt,
or the balance due, that, after notice of it, the debtor cannot
discharge himself by paying the original creditor, the assignor;
and it is so far recognized as a right in a court of law, that, in
a suit brought in fact by the assignee, but in the name of the
assignor, the court will take notice of the right of the assignee,
and protect it, and will not permit the assignor to discontinue
or release the action, or in any way to control it.

That this order was given as security for advances made or
to be made by Seabury, in the seaman's absence, seems to
be put beyond doubt by the evidence. The order was for
the whole lay, and for value received. After Tripp returned,
having been discharged abroad by the order and consent of
the master, the assignment was given for a confirmation of
the former order, and the recital is, that he has sold his voyage
to Seabury for a fair consideration. The attesting witness,
son of the assignee, testified that at that time Tripp said the

bill of sale was given to make his father safe for what he had advanced to him, and to his family since his absence. He also testified that Tripp said he owed many debts, and was afraid of having his voyage trusteed. It is said this evidence was objected to by the defendants. It does not appear which party this witness was called by ; nor is it, perhaps, material. The language was that of the plaintiff; it was admitted, and the defendants may avail themselves of it. Probably what was objected to was the statement of the plaintiff that he made the assignment to avoid attachment by his creditors. But even if he had such a purpose, and the assignee participated in it, — which the statement did not show, — it would not avoid the assignment as against the plaintiff, the assignor himself. Though it might have been void as against his creditors, it was good against him.

But even in the formal revocation of Seabury's power, there is proof that the original balance order was given as security for advances made or to be made. He forbids the owners to pay Seabury any moneys due him upon his voyage in ship Envoy, on the balance order he gave him, at the sailing of said ship, as the order was without value received, and only as a protection to said Seabury. What was he to be protected from, unless loss on any advances, or credits, or obligation on his part, against which Tripp intended to give this security. All that the notice intimates is, that it was not given for value then received, or not for the full value. He does not suggest that Seabury has not advanced money to his family on the credit of the order, since it was given. That he had done so, is implied by his own declaration, at the time the second assignment was given.

The voyage or lay being an assignable interest, and being assigned as security, it is, both by its own terms and by force and operation of law, an assignment of the whole lay. It is in terms an assignment of the whole lay ; it must be so by operation of law. It is not competent for a creditor to assign part of the debt, so as to give any equitable interest in part of the debt, or create any lien upon it. The debtor, or holder of the assignable interest, cannot, without his own con-

sent, be held legally or equitably liable to an assignee for part, and to the original creditor, or another assignee for another part. *Mandeville* v. *Welch*, 5 Wheat. 277; *Gibson* v. *Cooke* 20 Pick. 15; *Robbins* v. *Bacon*, 3 Greenl. 346.

The defendants, therefore, having shown that the plaintiff had made a valid equitable assignment of the claim sued for in this action, and that due notice was given them of it by the assignee, so that they are bound to pay and account for it to him, such assignment is a good defence to this action.

It does not follow, because the assignee has a right to demand the whole lay of the defendants, that he is entitled to hold the whole, as against the seaman. Having received it as security, he will be bound, after deducting his own advances and necessary charges, to pay the balance to the seaman, from whom he received the assignment.

*Judgment on the verdict for the defendants.*