Buckner, &c.
vs.
Sayre.

---

Buckner, Trustee, &c., *vs.* David A. Sayre.

18m 745
97  473

18bm 745
c112 315

Case 38.

APPEAL FROM FAYETTE CIRCUIT.

Pet. Eq.

1. The drawing of a bill of exchange by a debtor, and its acceptance by the drawee, is an appropriation of that fund to the holder of the bill, and the drawer of the bill has no right thereafter to control it either by receiving or assigning it.

2. A general assignment of assets, after a bill of exchange has been drawn and accepted, will not pass the fund which by the bill of exachnge had been appropriated to its payment.

[The facts are set out in the opinion of the court. REP.]

*W. A. Dudley*, for appellant—

The principal question presented to this court is, whether the drawal and acceptance of the bill of exchange were in themselves sufficient to constitute a lien as against the appellant upon the funds of the company in the hands of the New Orleans agent.

A dictum of the court in *Mandeville vs. Welch*, 3 *Wheat*. 277, is the principal authority relied on by the appellee. It is there said that "a bill of exchange ' is *in theory* an assignment to the payee of a debt due ' from the drawee to the drawer. This is undoubted- ' ly true where the bill has been accepted, whether ' it be drawn on a general fund or specific fund, and ' whether the bill be in its own nature negotiable or ' not; for in such a case the acceptor by his assent, ' binds and appropriates ,the funds for the use of the ' payee. And to this effect are the authorities cited ' at the bar. (*Yeates vs. Groves* 1 *Ves. Jun*. 280; *Gib-* ' *son vs. Minot*, 1 *H. Bl*. 596, 603; *Tatlock vs. Harris*, ' 3 *T. R*. 174.) In case also where an order is drawn ' for the whole of a particular fund, it amounts to an ' equitable assignment of the fund, and after notice ' to the drawer, it binds the funds in his hands. But ' when the order is drawn on a general or a particu- ' lar fund for a part only, it does not amount to an ' assignment of that part, or give a lien as AGAINST ' THE DRAWEE, unless he consent to the appropriation ' by an acceptance of the draft, &c."

It will be found, however, that in every instance in which this doctrine has been applied, *the contest was between the parties to the bill*. *Gibson vs. Minot*, 1 *H. Bl*. 596, 603; *Tatlock vs. Harris*, 3 *T. R*. 174; *Yeates vs. Groves*, 1 *Ves.Jr*. 280. The acceptance is held to create a lien in favor of the holder *as against the drawee*, but not as against a stranger. The question here arises between the payee of the bill and the

assignee in good faith of the fund upon which it is alleged to have been drawn.

On the other hand, the reasoning of the court is to some extent in our favor, for it is not pretended that the bill now in contest embraced the whole amount of premiums expected to be received by the drawee, and though the petition alleges the acceptance to have been prior to the general assignment, the answer disclaims all knowledge of the time when the acceptance was made; and there is no proof upon the subject. It may be said that the fact is not sufficiently controverted by the answer, as it simply denies any knowledge of the date of the acceptance. The Code of Practice, however, provides that all pleadings shall be *liberally* construed. The appellant was not connected with the company at the time the bill was drawn. The answer shows that he was not aware of its existence at the time the assignment was made, and could only presume its genuineness when the answer was filed. He represents other parties, and has no personal interest in the result, and should not therefore be held to the same strictness of allegation or denial as if he were personally acquainted with the facts and personally interested in the controversy. If this view be correct, appellee must fail upon his own authority at the very threshhold of his case.

But there are other peculiarities in this case.

1. The bill was drawn by the Insurance Company upon its own agent at New Orleans, by whom it was officially accepted. It was not James Wheeler, but the Lexington Insurance Company, who accepted the bill. In point of fact, therefore, the company was the drawer and acceptor. No other party was liable upon the bill. (*Bailey on Bills,* 73; *Shelton vs. Darling,* 2 *Conn. Rep.* 435.) It is idle, therefore, to say, that the bill was an assignment of a debt due from itself, the drawee, to itself, the drawer. The engagement of the company was general to the pay bill, not out of the assets of any particular agency, but from

its general funds. Otherwise, the instrument would be no bill of exchange. The direction to its agent at New Orleans fixes only the place of payment. The result would have been precisely the same had the company executed a simple promissory note payable at its New Orleans agency.

2. The doctrine contended for by the appellee would lead to interminable difficulties. Suppose a manufacturer in Lexington to have placed in the hands of his commission merchant at New Orleans goods worth at present prices $10,000, on the faith of which he sells to A. his merchant's acceptance for $5,000. Afterwards, being pressed for money to carry on his business, he obtains from his merchant an additional $3,000, payable at an earlier date than the first one, and sells it to B. Now, suppose the market value of his goods to decline to such an extent that the proceeds are insufficient to pay both bills. The bill last drawn, but first maturing is paid, and the acceptor then fails. Will counsel contend that in such case A., the holder of the first acceptance, can recover from B. the amount paid him on the second? He would be clearly entitled to do so if his acceptance "constituted in fact or law an assignment and appropriation" of the funds of the drawer in the hands of the drawee to the payment of the bill. The case I have supposed is no unusual one. It is of daily occurrence in times of financial disturbance; but counsel will search the books in vain to find an instance in which the doctrine they contend for is recognized by the court. The negotiability of commercial instruments will be at an end whenever such a principle is introduced. It would enable a debtor to shingle his property with liens of which the public could have no notice.

3. But the agent at New Orleans held his place at the pleasure of the company. He had no control over their funds save as directed by them. It had been their custom, as it was their right, to order the transfer of their funds from one agency to another,

as they thought proper. These facts must have been known to the appellee, himself a stockholder, and at one time a director of the company. The claim is that the bill is an assignment of premiums subsequently to accrue in the hands of the New Orleans agent. The company were at liberty to discontinue that agency before a dollar of additional premiums had been received. Their power in these respects was certainly not affected by the drawing of the bill. The object of the parties in making the bill payable at a future period was to obtain money for present purposes upon the credit of the company. That object would be utterly defeated if the acceptance of the bill deprived them of the control of their funds. How, then, when so perfect a control remains to the company, can they be said to have parted with their right by assignment?

It was contended by the appellee (in the court below,) that the acceptance of the agent imposed upon him at least a liability to the extent of funds in his hands; that it was therefore his duty to appropriate those funds to the payment of the acceptance, and that his power in this respect was beyond the control of the company. But the authorities above cited are ample authority for our position that the acceptance imposed no kind of liability on him, not even in case of a misapplication of the funds in his hands to his own use. The liability of the agent was to the principal alone, not to the holder of the note.

4. Even if, as between parties to the bill, the appellee was entitled to have the assets of the New Orleans agency applied to the payment of his bill, there can be no such right as against the appellant, and his *cestui que trust*. They are purchasers for a valuable consideration, without notice, and have, by their diligence, obtained possession of the fund in controversy. "*In acquali jure melior est conditis pessidentis.*" But the equities of the parties are not equal, for the appellee himself stood by when the assignment was

BUCKNER, &c.
*vs.*
SAYRE.

made, and without asserting the claim now set up, he sought to protect this very bill by having it preferred in the assignment. On this point the deposition of Brand is full and explicit. He says: "Sayre 'was present at the meeting of the board held prior 'to the assignment, and was freely consulted in re-'ference to all the business of the company. He was 'extremely desirous of giving protection to the endors-'ers." "I think he brought up the subject of said 'bill, and thought its situation was peculiar, and 'equity demanded its protection. But this was not 'the view taken by the board, and I think Mr. Skill-'man, who was the largest endorser for the compa-'expressed his dissent, and said that he did not think 'it right to protect any endorser; after which little 'was said, but *Mr. Sayre expressed his assent to the ac-'tion taken.*" "I never heard him claim or assert any 'lien as attaching to his bill upon the funds of the 'agency. *He did speak of the bill as a loss to him indi-'vidually, but thought it a hard one.*"

5. The assignment which thus received his assent protected him in other demands which he held against the company, to the extent of which he is still claiming its benefit. (See the cross petition.) The right to have the assets of the New Orleans agency applied to the payment of his bill was never asserted by him until the filing of his cross petition in May, 1854, two years and a half after the assignment to the appellant.

It appears from the record of the principal case, (*Page & Richardson vs. The Insurance Company,*) now on file in this court, and also from the deposition of Brand, that the bulk of the assets of the company at the time of the assignment consisted of premium notes and accounts in the hands of the different agents, and that every member of the board was liable as endorser upon bills of a precisely similar character to the one in controversy. Brand proves that the board regarded these bills as general liabilities of the company, and not of the particular agencies

upon which they were drawn, and that, on discussion of the question, they refused to prefer them in the assignment.

The language of the deed is ample to pass the assets of the New Orleans agency. The proof shows that it was intended to pass them, and that Sayre knew it. The appellant answers that he so understood it. Had Sayre asserted his present claim at the time the assignment was made, does the court suppose that the board would have protected any portion of his remaining claim, and thus have placed him in a better position than they allowed themselves to occupy? To permit him to do so now would be contrary to every principle of equity. He has accepted the provisions of the assignment, and must abide by it as a whole. " He who accepts a benefit ' under an instrument, must adopt the whole, con- ' forming to its provisions and renouncing every right ' inconsistent with it." He was present when the fund upon which he claims a lien was assigned to the appellant, and made no objection to it. " His con- ' science is bound by an equitable estoppel, for in ' such a case it is emphatically true, ' *Qui tacet, con-* ' *sentire videtur: qui potest et debet vetari jubet si non* ' *velat.*"

*Robinson & Johnson*, for appellee—

On behalf of Sayre, we contend that the drawing of the bill of exchange by the company on, and accepting by, its agent, was an assignment of so much of the funds in the agent's hands. The authority of the case of *Mandeville vs. Welch*, is direct upon this point. But in truth it results from the very nature of the bill of exchange, which is an order by the drawer on the drawee to pay a sum of money which the drawee owes the drawer. Such an order, drawn on a particular fund, would unquestionably be a transfer of that fund without an acceptance. If drawn generally, it is a transfer of any funds in the drawee's hands.

BUCKNER, &c.
vs.
SAYRE.

The opposite side contend that this is not really a bill of exchange, but a kite, drawn, accepted, and endorsed by the company, and creating no obligation or duty on any one but the company; and in proof of this the deposition of William Brand is taken, which shows that the company, in its last days, resorted to the means of *kites*, or *race-horse* bills to raise money—the usual expedient of embarrassed or broken individuals. They fail, however, in bringing to Sayre or his agent, any knowledge that this bill was not in all respects a legitimate commercial or business transaction, consequently it does not lie in the mouth of the Insurance Company to say that the bill is not legitimate, or does not have all the effect and qualities of a legitimate bill. In the proper and regular course of business, an Insurance Company can draw an order on one of its agents for money in such agent's hands. Where money is fairly expected to be in an agent's hands by a given time, the company might fairly, in the exigencies of business, draw this order payable at a future time, in anticipation of those funds. When the agent accepts such an order, he should, forthwith, upon the books or accounts of the agency, charge the company and credit the agency by the acceptance. In the same manner, if a planter or manufacturer draws a bill on his commission merchant, (who is his agent,) the merchant or factor immediately credits himself and charges his principal with the acceptance before payment, and as soon as the acceptance is made. If this proper and regular course is pursued, I do not see the difficulties which the opposite counsel supposes arise out of the principles for which we contend. If the company removes the agent and appoints another, it is the duty of the removed agent *only* to pay over the *balance* of funds and assets that are due from his agency, and if the acceptance is credited to the agency, in paying over the balance, there will remain in the agent's hands a sufficiency of assets to pay the acceptance. In this manner the

acceptance becomes a charge upon the assets of the agency as soon as made. Wherever parties adopt the bill of exchange as the form of a transaction, they will be considered as adopting all the legal consequences of the bill. Hence it is that where there are accommodation acceptors and endorsers, their liabilities will not be joint and equal like other sureties, but their respective claims on each other are exactly as if the bill were a legitimate business transaction throughout. Upon the same principle, when a principal draws on an agent, whose business leads to the receipt of money for the principal, it will be held, (especially in the hands of an innocent *bona fide* purchaser,) that the bill of exchange drawn by such principal on such agent is a legitimate business transaction, being the drawing on those funds received or to be received. Such drawing by a principal on the agent is wholly unlike the case of a third person drawing on the agent of another; in that case the acceptance of the agent is the mere acceptance of the principal, and is considered as evidence that the principal and not the agent owes the third person who draws. This is the case refered to by the counsel of the opposite side, decided in *2d Con. Reports*. Where the principal draws on his agent such drawing imports that the agent has *funds of or is indebted to his principal* for money received or otherwise. The acceptance by the agent is a recognition of having such funds and an agreement to pay them in discharge of the draft, and if such acceptance does not bind the agent personally, (which I do not concede,) it at least binds him personally to apply the funds of the principal in his hands to that object.

It is attempted to place Buckner in the position of a *purchaser* of these funds for valuable consideration without notice. In general assignments for the payment of debts, it is well settled that the trustee does not occupy that position, but holds the funds subject to all the equities against them. The conveyance is

founded entirely upon a *past* consideration, not a present one, and lacks the essential quality of the payment of money or other valuable thing, as the consideration of the transfer. Occupying the position he does, the trustee is presumed to know, and it is his duty to find out, all the debts, contracts, and liabilities of the debtor, and his property. As regards the funds placed in trust he represents the debtor himself.

It is also contended, that it does not appear that the acceptance by Wheeler was before or after the assignment in November to Buckner. He simply answers that he *does not know* whether it was before or afterwards. But he does not deny that he has sufficient information to satisfy him that it was before the assignment. Although Buckner, from his position, might have very little personal knowledge of the acceptance of this bill, yet he would have the means of certain and absolute information concerning it. His position makes it probable that he had such information, and he is bound by these circumstances as well as by the clear requirements of the Code of Practice, to answer as to that information. It is in the highest degree improbable that Wheeler, after the assignment, and consequent insolvency of the company, would accept.

With these hasty suggestions we submit the case.

Jan. 23, 1858.    Judge SIMPSON delivered the opinion of the court.

The Lexington Insurance Company, on the 5th of August, 1851, drew a bill of exchange on James H. Wheeler, its agent at New Orleans, payable at six months, for the sum of $7,182, which it sold to David A. Sayre.

In November, 1851, the company made a general assignment of all its effects to Buckner, as trustee for the payment of its debts.

The bill of exchange which Sayre had purchased was accepted by Wheeler as the agent of the company, and was protested for non-payment. The

BUCKNER, &c.
vs.
SAYRE.

funds which Wheeler had in his hands, being upwards of three thousand dollars, were paid over by him to Buckner, the trustee, after the execution of the deed of assignment.

Sayre, as the holder of the bill, claims that fund, and denies the right of the trustee to appropriate it to the purposes of the trust. He alleged in his petition that the bill of exchange was drawn by said company, in anticipation of premiums to be received by said agent, and was accepted by him before the assignment was executed.

The trustee admitted, in his answer, that the assignment was made after the bill of exchange was drawn, but stated that he did not know whether the bill was accepted before or after the assignment was made. He did not however deny that he had any knowledge or information thereof sufficient to form a belief as to the truth of the allegation, and therefore it must, for the purposes of the action, be taken as true.

In *Story on Bills of Exchange*, sec. 13, it is said by the author, that the general theory upon which "bills 'of exchange rests, is that the drawer has funds in 'the hands of drawee, that he sells or assigns to the 'payee, for a valuable consideration, such part there- 'of as amounts to the sum payable by the bill; that when the drawee accepts to pay the amount it is 'an appropriation of the funds *pro tanto* for the ser- 'vice, and use of the payee, or other person holding 'the bill under him, so that the amount ceases hence- 'forth to be the money of the drawer, and becomes 'that of the payee, or other holder, in the hands of 'the acceptor." And in *Chitty on Bills of Exchange*, *page* 1, it is said by the author, that a bill of exchange "is an assignment to a third person, of a debt due 'to the person drawing the bill, from the person upon 'whom it is drawn."

1. The drawing of a bill of exchange by a debtor, and its acceptance by the drawee, is an appropriation of that fund to the holder of the bill, and the drawer of the bill has no right thereafter to control it either by receiving or assigning it.

The same doctrine was recognized in the case of *Mandeville vs Welch*, 5 *Wheaton*, 285, and it was said by the court to be undoubtedly true, that a bill of ex-

change, where it has been accepted, is an assignment to the payee of a debt due from the drawee to the drawer, whether it be drawn on general funds, or a specific fund, for in such a case, the acceptor, by his assent, binds and appropriates the funds for the use of the payee. The court also recognize the existence of a distinction between a case where an order or draft is drawn for the whole of a particular fund, and one where it is drawn, either on a general or a particular fund, for a part only. In the first case, it amounts to an equitable assignment of that fund, and after notice to the drawee it binds the funds in his hands. But in the last case, it does not amount to an assignment of that part, or give a lien on the fund in the hand of the drawee, unless he consent to the appropriation, by an acceptance of the draft. The reason of the distinction is, that a creditor shall not be permitted to divide a single cause of action, without the assent of his debtor, so as to subject him to several and distinct liabilities, not contemplated in his original contract. It has also been held that a draft on the executor of a debtor, which the executor promised to discharge on his receiving assets, is an equitable assignment of the debt, available against assignees in bankruptcy. (*Chitty on Bills,* 194.)

In the case of *Luff vs. Pope,* 5 *Hill,* 418, a different doctrine is asserted, but no authority except a decree of the Vice Chancellor of the same state is referred to in support of the decision. It appears from the decision that under the statutory law of that state no obligation can be imposed upon the drawee of a bill, except by a written acceptance, and the reasoning of the court shows that the principle object which it had in view in its decision, was to advance and effectuate the legislative intention with respect to that statutory provision.

It has been repeatedly decided that an order drawn by a debtor on a person having funds in his hands, is after presentment to the drawee, an assignment

of such funds to the extent of the order, and the drawee cannot legally part with such funds to the drawer or any other person. (*Peyton vs. Hallett*, 1 *Caine's Rep.* 379; *Cutts vs. Perkins*, 12 *Mass. Rep.* 206; *Yeates vs. Groves*, 1 *Vesy, Jun.* 280; *Lett vs. Morris*, 4 *Sim.* 607; *Bradley vs. Root*, 5 *Paige,* 632, 641.

These cases are analogous, although not on bills of exchange, the principles applicable to both class of cases having a strong resemblance. They therefore tend to sustain the general doctrine that an accepted bill of exchange, operates as an equitable assignment to the payee or holder thereof, of the funds in the hands of the acceptor, to which the drawer was entitled.

According to this doctrine, Sayre as the holder of the bill of exchange, was entitled to the fund in the hands of the acceptor, which the latter, by his *acceptance,* had appropriated for his use and benefit. The fact that the acceptor was the agent of the company, and his acceptance was in that character, cannot have the effect of avoiding the operation of the principle by which the drawing and acceptance of the bill amounts to an assignment of the fund in the hands of the acceptor. Funds in the hands of an agent are as much the subject of an assignment as funds in the hands of a debtor. Indeed they would seem to be more peculiarly the subject of an assignment, inasmuch as they are more under the control of the principal, than a debt due from a debtor is under the control of a creditor.

Nor do we think that Sayre's right to this fund was prejudiced by his presence at the time the assignment was made by the company, and his assent to its execution. The fund in controversy was not mentioned on that occasion, nor is it specified in the deed of assignment. No implied assent by Sayre to its transfer, nor any waiver of his claim to it, can therefore be inferred, from any thing that then occurred. The deed of assignment transfers to the trustee, in general terms, all the effects, debts, choses

*2. A general assignment of assets, after a bill of exchange has been drawn and accepted, will not pass the fund which by the bill of exchange had been appropriated to its payment.*

in action, &c., that then belonged to the company.
It does not purport to convey any thing which had
been previously assigned away by the company, and
of course does not embrace this fund which had
been assigned and appropriated for the payment of
the bill of exchange of which Sayre was the holder.
In consenting to the execution of the deed, Sayre
only agreed that the company might transfer the ef-
fects and funds that belonged to it, to the purposes
of the trust; he should not be regarded as consent-
ing to the transfer of a fund to which he was enti-
tled.   He may not have known at that time, of his
right to this fund, as the holder of the bill; but if he
did, he was under no obligations to assert it, inas-
much as the right to transfer it was not claimed by
the company, nor was the right to it the subject of
discussion between the parties.

Wherefore the judgment is affirmed.