JAMES LOVE *vs.* ARTHUR FAIRFIELD.

The owner of a judgment at law cannot assign to another person a part thereof, without the consent of the debtor.

## ERROR TO ST. LOUIS CIRCUIT COURT.

### STATEMENT OF THE CASE.

Fairfield sued Love in trespass to the April term, 1846, of the St. Louis circuit court, and got judgment by default, on which damages were assessed at the same term for $800, and execution issued therefor. The execution was returned "satisfied in full," by the sheriff acting under instructions from the plaintiff, Fairfield. This return was made Oct. 28, '46, the regular return day of said writ being the third Monday of November of that year.

On the 28th November, 1846, Field & Hall filed their motion to the St. Louis circuit court. to award execution on the said judgment and to set aside and vacate the entry of satisfaction on the execution by Fairfield, for the following reasons: "1st. That Field & Hall had an assignment of five hundred dollars by the said Fairfield before said satisfaction was entered on said execution. 2nd. That said defendant knew that the said Field & Hall had an interest in said judgment at the time he settled with Fairfield." This motion was called up for hearing on the same day it was filed. Judge Krum heard some evidence on that day, and held the matter up till January 9th, 1847, when he allowed the motion of Field & Hall, and gave judgment that the entry of satisfaction on said judgment, made by said plaintiff, be and the same is hereby vacated, so far as regards the claim of the said Field & Hall, to the amount of five hundred dollars, and that execution for the said sum of five hundred dollars issue on said judgment for the benefit of said Field & Hall, assignees of said judgment, to that amount. Love excepted, and filed his bill of exceptions, first moving for a re-hearing, which was refused.

It appears by the bill of exceptions that on Saturday the 28th day of November, 1846, when said cause was called for trial, the judge of the St. Louis circuit court (Judge Krum) asked if said Love were present; whereupon T. T. Gantt, the attorney of said Love, stated that he attended on the part of Love, who was present in court, having accidentally heard on the morning of that day that such a motion was pending, and had employed him (Gantt) to attend to it for him, and that as such counsel he objected to the irregularity of the proceedings, and particularly that the proper parties were not before the court, and could only be brought before the court by a bill in chancery. Love had been subpoenaed as a witness in the cause and was present. One John H. Deck was also present. The court decided to hear such facts as might be offered, and thereafter to decide upon the law and the facts of the case, to which decision Love excepted. Field and Hall then read an affidavit made by themselves, which they had filed with the motion. This affidavit was not read as evidence of the facts it recites, but laying a basis for the enquiry upon which this court was entering. It set out the judgment in favor of Fairfield, the assignment of 5-8ths thereof to Field & Hall, and knowledge of that assignment to Love; also that Love fraudulently procured Fairfield to enter satisfaction of said judgment, after being informed of the said assignment. Field & Hall then called as a witness John H. Deck, (who was unknown to the counsel of Love) who testified that some time in August, 1846, he had a conversation with Love about the judgment which Fairfield had obtained against him. That this conversation took place near the shop of Love, who is a blacksmith. That in this conversation Love stated that Field & Hall had an assignment of five hundred dollars of the said judgment. That deponent once had an interest in said judgment, which he had sold to Field & Hall, and that he had no interest at the time he testified.

S. M. Bowman testified that in October, '46, Fairfield and Love came to his office. They stated that they had been trying to settle. Fairfield said he was willing to settle with Love; for he did not believe that Love cut his waggons. Love said that he could settle with Fairfield, but that Field & Hall did not want to settle. Field & Hall were the attorneys of Fairfield. Fairfield stated that Field & Hall had an interest in the judgment, but he presumed he could settle with them, or fix it with them. The settlement between Fairfield and Love was made

subsequently to this interview  On cross examination, Mr. Bowman said that nothing was said on this occasion of an *"assignment"* of any part of this judgment to Field & Hall, and witness, though a lawyer, did not know that there was an assignment.   Field & Hall then read an instrument, purporting to be an assignment from Fairfield to Field & Hall of five hundred dollars of a judgment obtained against Love for eight hundred dollars, which instrument was dated May 24th, 1846, but it was admitted that it never had been filed with the papers of the cause, nor exhibited to Love until after the return of the execution in this cause.

Love by his counsel objected, first to the court taking any cognizance of the motion of Field & Hall at all ; and secondly he objected that the evidence was not such as to warrant the interference of the court in their favor.   The court took the matter under advisement on the Monday following this Saturday, to wit, on the 30th day of November, 1846, Love filed an affidavit to the effect that he was first informed of the pendency of the motion on the morning of the Saturday previous   That he was led, by information received from counsel, that the matter could not be disposed of by motion, and he was also informed that Field & Hall would have in attendance, and rely upon the evidence of Charles Collins, S. M. Bowman and Hugh Lackey, to prove that Love had notice of the assignment of the portion mentioned of the judgment to Field & Hall.   That he relied upon the facts, that he never had heard of such assignment, and he knew that none of the persons named could testify that he had so heard or knew of it.   That he was surprised by the production of Deck as a witness ; that Deck was a person of infamous character.   That affiant could prove by the testimony of numerous persons that said Deck was not a credible witness, and that he asked for an opportunity of trying this before a jury.   Affiant denied positively ever having had such a conversation as Deck detailed in evidence, and denied that he ever heard before the return of the execution as satisfied ; that Field & Hall had an assignment of any part of the judgment against him, or any lien upon, or separate interest therein ; which affidavit was filed as aforesaid, and handed to the judge on the first or second day of December, 1846, and before the determination of the said motion. Afterwards one Murphy filed an affidavit, which it is not deemed important to notice.   The court allowed the motion of said Field & Hall on the 9th day of January, 1847.   Love filed a motion for a re-hearing, and assigned the following reasons :

1st. That he was surprised by the testimony of Deck, who was infamous, as could be proved.

2nd. Because there was no testimony that Love knew of the said assignment to Field and Hall.

3rd. and 4th. Because the allowance of said execution, is against law and evidence.

5th. Because all the parties interested, were not before the court.

6th. Because the court proceeded to enquire respecting the fact of notice to Love, of said assignment, without notice, service on Love. Without notice to the other parties, and without the intervention of a jury.

On the 8th day of February, when the said motion came on to be heard, the counsel of Love informed the court that since filing said motion, they had ascertained that Field had on the 29th day of May, 1846, taken to, and filed, in the office of the clerk of the circuit court for Madison county Illinois, a transcript of the record in this cause, and made an affidavit, for the purpose of attaching property, belonging to Love, in the State of Illinois, that the amount of said judgment was due from Love to Fairfield.   And this the said Love then and there, offered to prove by competent testimony.   But judge Krum refused to permit Love to try such evidence, and Love excepted.   Love then offered evidence to prove, that in fact; he had no notice of the assignment from Fairfield to Field and Hall, before the return of the execution in this cause, but the court refused to hear such evidence, and Love excepted,   Judge Krum refused to reconsider the cause, and overruled Love's motion for a rehearing, and Love excepted, and sued out this writ of error.

The above statement is correct except that Bowman testified, that when Love and Fairfield were at his office negotiating about a settlement, the office of Field & Hall, was on the same

floor as witness's office, and excepts also, that at the time of the trial of the motion for a new trial, the defendant offered to prove that the transcript filed by Field, in Illinois, was accompanied by an affidavit made by *Fairfield*, and not by *Field*, as set forth in the foregoing statement.

POLK and GANTT, for plaintiff,

1st. The motion of Field and Hall (filed on the 28th November, 1846,) shows no cause or reason sufficient to justify the action of the court below. It does not show that Field and Hall had an assignment of any part of the judgment against Love; but only that they had from Fairfield "an assignment of five hundred dollars," neither does it show that Love knew that Field and Hall had an assignment of said judgment, but only that he had been informed that they had "an interest in it," which is a very different thing.

2nd. While it is not denied that the assignee of a chose in action, will be protected against attacks of the assignor, done after the notice of the assignment, and detrimental to the interest of the assignee, it is denied that any one can be the assignee of *part* of a chose in action, or even of a negotiable instrument. See Mandeville vs. Welch, 5 Wheatons Reports p. 277, 28.; Hawkins vs. Cardy 1 see Raymonds Reports, 360; Smith vs. Oldham, 5 Mo. Doc. 483.

3rd. The action of the court below, was unwarranted by the evidence, given on the 28th November, 1846. And it was especially erroneous, after proceedings to the hearing of the testimony on the motion on that day, to refuse to allow to Love, permission afterwards, to disprove the statements of the witnesses by whose testimonies as he swears, he was surprised. The record shows, not a case of judicial discretion soundly exercised; but of arbitrary power so exerted as to work injustice; and this is a ground for reversing the judgment. Moreland & Barnum vs. McDermott, 10 Mo. Reps. 605.

4th. It is no where alleged in the reasons given and assigned, by Field & Hall for setting aside and vacating the entry of satisfaction, that only part of the judgment was paid by Love to Fairfield, or that Love did not pay to Fairfield, the full amount thereof. Nor is there in the evidence, any thing to contradict the fact that Love did pay to Fairfield the amount of the judgment in full. The fact must be regarded then as established; then Fairfield being the legal holder and owner of the judgment, and the only person to whom payment could be made. Love acted properly in paying the same to him; and as to any interest therein, of Field & Hall, Fairfield was in respect thereof, a trustee for them; but as for Love, Fairfield was the only person to whom he could properly make payment. Reid vs. Fumival, 1 Crompton & Masons Reps. 528.

5th. Neither does it appear by allegation or proof that Fairfield was insolvent, and that Field and Hall could not therefore, have any beneficial recourse against him.

6th. If Fairfield, and Field and Hall, were tenants in common of the judgment, which is the utmost that can be gathered from the allegations of Field & Hall, by the most indulgent construction, still Fairfield had power to release the rights of himself, and his co-tenants. Lane vs. Dobyns, 11 Mo. Rep. 105; 13 Johnsons Reps. 286, Austin vs. Hall; he did make this release, and it is valid.

7th. It is not decided in the case of McLaughlin vs. Fairbanks, Lisle et al, 8 Mo. Reps. 367, that the assignee of part of a chose in action, has any standing in a court of justice. That case went off on other grounds, and the authorities cited in support of such a position, do not in fact sustain it. 19 Johns. Reps. 95; Do. 344, 5 Johns. 193.

CROCKETT & BRIGGS for defendants.

1st. That the remedy by motion is the appropriate one in the case at bar. Lampkin et al. vs.

Lisle & Edwards, 8 Mo. R. 367; Wardell vs. Eden, 2 John Cas, 121, 258; Buchec vs. Bank of N. Y., 1 John R. 530; Viners ab. title Judgment 597; Coleman and Carins, cases 137.

That Love had actual notice of the assignment, and his settlement with Fairfield was in fraud of the assignee; but if he had not actual notice, he had notice of such circumstances as should have put him on his guard, and this is sufficient. (See Bowmans's testimony.)

Anderson vs. Van Allen, 12 John. R. 393 ; Lodge vs. Simonton, 2 Pa. R. 439; Barnes vs. McClintrop, 3 Pa. R. 67; Peebles vs. Reading, 8 Leavy and R. 496; Laughlin vs. Fairbanks, &c., 8 Mo. R. 367; 1 Cowan 642.

Notice to agent or attorney is notice to the party. Haven vs. Stone, 15 Pick. 28, 32 52; Story on Agency, 131.

3d. That Love being present in court and represented by counsel, upon motion was called, waived the necessity for notice. Being in court, notice would have been superfluous. If not ready for trial, he should have moved for a continuance, which was not done. 8 Mo. R. 367; Graham's Practice, 508.

4th. That the affidavit filed by Love, after the cause had been submitted, in relation to the testimony of Deck, was accompanied by no notice for leave to introduce testimony, nor for a continuance, and was therefore properly disregarded by the court.

5th. The motion for a new trial, was properly overruled by the court, before the cause was decided. Love was aware of the facts alleged as impeaching the character of Deck, and should have moved for a continuance. He should not be allowed to take the chance of a decision in his favor and when decided against him, get the benefit of a second trial, and a new trial is never afterwards to allow a party to impeach a witness. Graham's Practice, 511 ; 1 Caines, 24 ; 3 John. R. 255 ; 5 John. R. 248 ; 14 John. 186.

Nor on the ground of cumulation testimony only. 8 John. 65, 15 John. 210 ; 9 Cowen, 266.

6th. Without the testimony of Deck, there was sufficient proof of notice, or what was equivalent to notice, to sustain the judgment of the court, and therefore a new trial ought not to have been granted, to allow defendant to impeach Deck.

7th. The newly discovered evidence offered by defendant on the hearing of the motion for a new trial, was properly rejected. 1st., because if allowed, it ought not to have varied the judgment of the court, and was not material to the issue. 2nd., because it was not accompanied by an affidavit of the defendant or any one else, but rested only on the statement of counsel.

8th. No one but Love, was entitled to notice of the motion, he being the only party interested in its decision, and having appeared to the motion without notice, he cannot complain of its omission.

RYLAND, Judge, delivered the opinion of the court:

The main question, from the above statement of the case, involves the right of a party to assign to another, a part of a judgment at law, can the payee of a chose in action, assign a part thereof to another, so as to effect the rights of the payer without his assent ?

The validity of an assignment of a part of a judgment, is a question, which was not passed upon by this court, in the case of Laughlin vs. Lisle and Edwards (8 Mo. Rep. 369) because it was not made. It did not occur to the court, that there could be any doubt about the right to assign a part as well as the whole of a judgment.

The words "part" and "whole" being terms familiarly used in mathe-

matics, the mind too readily assented to the power or right of him to assign a "part," who could legally assign the "whole," without considering the consequences and legal bearing of this question.

Upon examination we find it asserted in several cases, and especially in the case of Mandeville vs. Welsh (5 Whea. 277,) that a court of law will not interfere to protect a partial assignment of a chose in action. The reason for the distinction, as expressed by Judge Story in the case first cited is this : "a creditor shall not be permitted to split up a single cause of action into many actions, without the assent of his debtor ; since it may subject him to many embarrassments and responsibilities not contemplated in his original contract. He has a right to stand upon the singleness of his original contract, and to decline any legal or equitable assignment, by which it may be broken into fragments, when he undertakes to pay an integral sum to his creditor, it is no part of his contract, that he shall be obliged to pay in fragments to any other persons."

A judgment so far as its assignable quality is concerned, is like any other chose in action. If the doctrine be applicable to the assignment of funds, either general or special, secured by simple contract specialty, negotiable or not negotiable, no reason is perceived why it does not extend to an assignment of a judgment. Every reason for the doctrine has as much application in the one case as in the other.

That such assignment may create equities between the immediate parties, the assignor and assignee is a matter not now important to enquire into : but the original debtor, must be a party consenting to such arrangement, before he can be affected by it : If a part of a judgment can be assigned, we know of no point at which its divisibilty can be checked. It may be divided into numerous aliquot parts and each part, assigned to different individuals.

Would not this be a great inconvenience to the debtor, and one to which he cannot be subjected without his consent. We have not found any case in which a part of a judgment has been assigned, and therefore have found no decision directly upon the point. But is it not some evidence, that such a practice is not tolerated from the fact, that it seems not to have occured ? It is remarkable, that no case can be found tolerating such an assignment. This circumstance alone is calculated to make against the claim.

Choses in action were not assignable at common law ; courts of equity however took charge of the interest of the assignee ; and then the courts of law, were forced to take notice of them.

But there is no policy in carrying the doctrine now held any further-

39

Said transactions at best, tend to promote litigation, to increase costs and to prevent the amicable settlement of disputes between the parties originally only concerned. It is the interest of the State that litigation should not be encouraged.

The great tendency to promote champerty and maintenance; to prevent the parties themselves from making their own settlements of their disputes; to increase the number of suits, and to add to the burden of costs now sufficiently onerous already, have had much consideration with this court, in forcing us to the conclusion, that such partial assignment of a judgment, without the assent of the debtor shall not affect him.

From this view of the subject it will not be necessary for us to decide the question of notice of the assignment of part of the judgment to Messrs. Field and Hall, previous to the arrangement between Love and Fairfield by which the execution was ordered to be returned satisfied, and was so returned by the sheriff.

There is no pretence, that such assignment of a part of the judgment, was made by the consent of Love; indeed there is very great doubt whether he knew any thing of such assignment before himself and Fairfield settled.

The judgment of the circuit court sustaining the motion of Field and Hall "to award execution on the judgment against said defendant and to vacate the entry of satisfaction on the execution by Fairfield" is erroneous, and the said motion should have been overruled.

The judgment of the circuit court is therefore reversed, and this cause is remanded to said circuit court, with directions to overrule said motion.