THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY v. NANCY C. JOHNSON.

1. CONTRACT, *Champertous and Void; Practice; Error.* Mrs. J. had a claim against a railroad company, for damages alleged to have resulted from negligence on the part of the railroad company. She and her attorneys entered into a parol contract that they would commence and prosecute an action in her name against the railroad company, and that they would pay all the expenses of the prosecution; and in consideration therefor, that they should receive for their services and expenditures a certain portion of the judgment which it was supposed would be rendered in favor of the plaintiff and against the railroad company. The action was so commenced and prosecuted, and judgment was finally rendered in favor of the plaintiff and against the railroad company for a certain sum of money. The railroad company immediately commenced to make preparations to take the case to the supreme court. While so doing, the plaintiff executed a written assignment to her attorneys of that portion of the judgment which they were to receive for their services and expenditures. Afterward, and while the railroad company was still preparing to take the case to the supreme court, the plaintiff and the railroad company compromised and settled all their disputes, and the plaintiff released and discharged the judgment, which had been recovered in her name against the railroad company. At the time of this compromise and settlement and release and discharge, both the plaintiff and the railroad company had notice of the written assignment of a portion of the judgment, made by the plaintiff to her attorneys. The written instrument of release and satisfaction was entered of record. Afterward, the plaintiff's attorneys filed a motion in her name to

set aside the release and satisfaction, to the extent of their claim, and to have execution awarded upon the judgment to that extent. The court sustained the motion, over various objections made by the railroad company. *Held,* Error; that the contract made between the plaintiff and her attorneys, including the original parol contract, and the written assignment made in consequence thereof, was champertous and void; and that when she compromised and settled with the railroad company, and released and discharged the judgment, she conferred upon the railroad company the right, if the company did not have such right before, to treat the contract between the plaintiff and her attorneys as champertous and void; that the motion should have been overruled; that it could not be sustained in favor of the plaintiff, because she had settled and compromised with the railroad company, and released and discharged the entire judgment; and it could not be sustained in favor of her attorneys, because to do so would be to enforce a champertous and void contract.

2. ———— Various other questions discussed in the opinion.

### *Error from Rice District Court.*

ACTION brought by *Nancy C. Johnson* against the *A. T. & & S. F. Rld. Co.*, to recover damages for personal injuries. Trial in February, 1880, at the adjourned December Term, 1879, of the district court, and judgment for plaintiff for $3,450. March 22, 1880, the plaintiff executed a written assignment to her attorneys of that portion of the judgment which they were to receive for their services and expenses in the action. July 19, 1880, the defendant paid the plaintiff $575 in full settlement of the foregoing judgment, and received from her a written release and satisfaction thereof, which was afterward duly attached to the record of the judgment. July 22, 1880, the plaintiff, at the instance of her attorneys Smith and Daniels, executed a revocation of said release, which was also attached to the record of the judgment. May 27, 1881, the attorneys aforesaid filed a motion in plaintiff's name to set aside the release and satisfaction to the extent of their claim, and to have execution awarded upon the judgment to that extent. At the June Term, 1881, the district court sustained the motion, to which the defendant *Railroad Company* excepted, and has brought the case here. All necessary facts, pleadings and proceedings appear in the opinion.

*Geo. R. Peck,* and *A. A. Hurd,* for plaintiff in error.

*W. R. Brown, J. H. Smith,* and *A. R. Clark,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: It appears from the record in this case, that on January 11, 1878, Nancy C. Johnson was injured by a fall, which she experienced while attempting to step from <span style="font-variant: small-caps">Statement of facts.</span> one of the cars of the Atchison, Topeka & Santa Fé railroad company to the ground, at Raymond, Kansas. Afterward, and prior to April 11, 1878, Mrs. Johnson entered into a parol contract with J. H. Smith and C. T. Daniels, as follows: Smith and Daniels were to commence and prosecute an action in her name against the Atchison, Topeka & Santa Fé railroad company, to recover damages for the said injuries. They were to pay all the expenses of the prosecution, and in consideration for their services and expenditures were to receive either one-half of the amount of the judgment to be recovered, or a portion of such judgment amounting to $2,000; and Mrs. Johnson, on her part, was to receive either the other half of such judgment, or the excess of the judgment over and above the amount of $2,000. As to which had the option in determining how the judgment should be finally divided when recovered, the record does not clearly show. Afterward, and on April 11, 1878, Smith and Daniels, in pursuance of their contract with Mrs. Johnson, commenced an action in the district court of Rice county, in the name of Uriah D. Johnson and Nancy C. Johnson, against the Atchison, Topeka & Santa Fé railroad company to recover for said injuries; but they afterward so amended their petition as to make Mrs. Johnson the sole plaintiff in the case. The action was afterward tried by the court and a jury, and on February 4, 1880, judgment was rendered in the case, in favor of Mrs. Johnson and against the railroad company, for the sum of $3,450. The defendant railroad company took proper exceptions to the various rulings of the court during the trial, and also moved for a judg-

ment in its favor upon the verdict and findings of the jury, and also moved for a new trial; which motions were overruled by the court, to which rulings the defendant duly excepted. The defendant then made a case for the supreme court, which case was duly served, settled, signed and authenticated, and was duly filed in the office of the clerk of the district court of Rice county. On March 22, 1880, Mrs. Johnson, in consideration of her previous parol contract with Smith and Daniels, and of the services rendered by them in the case, and of money expended by them in the prosecution of the case, duly executed the following assignment to Smith and Daniels, to wit:

"RICE COUNTY, KANSAS, March 22, 1880.

"For and in consideration of the sum of five hundred dollars, to me in hand paid, and legal services for me performed, by J. H. Smith and C. T. Daniels, I do hereby sell and assign to the said J. H. Smith and C. T. Daniels an interest of two thousand (2,000) dollars in a judgment of $3,450, in my favor and against the Atchison, Topeka & Santa Fé railroad company, in the district court of Rice county; and I do authorize the said Smith and Daniels to reserve the said sum out of the said judgment, when they may collect the same; or I do authorize the clerk of the district court to pay them that sum, and interest at seven per cent. on the same from January 6, 1880.                  NANCY C. JOHNSON."

On July 19, 1880, Mrs. Johnson and the railroad company settled and compromised all their disputes, and Mrs. Johnson executed the following release, to wit:

"Judgment $3,450.—$575.—For and in consideration of the sum of five hundred and seventy-five dollars, to me in hand paid by the defendants in the above action, I do hereby acknowledge a full release, discharge and satisfaction of the above judgment and costs, and do direct, authorize and request the clerk of said court to enter upon the judgment docket of said court a full release, discharge and satisfaction of the same. Dated July 19, 1880. (Signed) NANCY C. JOHNSON. Witness: WARREN WYNANT, J. G. WATERS."

The judgment, as it appears in the records of the district court of Rice county, was duly entered satisfied; and this release was attached to the judgment.

It is admitted by the parties that the railroad company had notice of the original parol contract between Mrs. Johnson and Smith and Daniels; but whether the railroad company had any notice or knowledge of the assignment made by Mrs. Johnson to Smith and Daniels, is a disputed question of fact. We shall say more with reference to this question hereafter.

Afterward, and on July 22, 1880, Mrs. Johnson, at the instance of Smith and Daniels, executed the following revocation of said release, to wit:

"I, Nancy C. Johnson, do hereby declare that the foregoing instrument, purporting to be a release and satisfaction of the foregoing judgment, was only intended as a release of fourteen hundred and fifty dollars, and interest on the same at seven per cent. since the rendition of said judgment; that the remainder of said judgment, two thousand dollars, was assigned to J. H. Smith and C. T. Daniels for services rendered and money advanced by them on the 22d day of March, 1880; and that I had no authority to settle or compromise their said interest in the said judgment, and did not intend to include their interest in the said release.

(Signed) NANCY C. JOHNSON."

This revocation was also attached to the judgment, as it appears in the records of the district court of Rice county.

The great preponderance of the evidence, if not the entire evidence, shows that Mrs. Johnson, when she entered into the contract of settlement with the railroad company, and when she signed said release, intended to include the entire judgment, and to release the entire judgment without any reference whatever to any supposed interests which Smith and Daniels might have had in the judgment. Indeed, we think it may be said that there was no competent or legitimate evidence to the contrary. But whether she could make such a settlement, and execute a valid release of the entire judgment, including Smith's and Daniels's supposed interests therein, is one of the principal questions involved in the case, and is really the only question in this connection. Nothing further was done in the case by either party, or by any person, until May 27, 1881.

On May 10, 1881, § 556 of the civil code was so amended, by an act of the legislature, which then took effect, that no proceeding to reverse, vacate or modify any judgment or final order of the district court could thereafter be commenced in the supreme court, unless the same was begun within one year after the rendition of the judgment or the making of the final order. This statute, by its terms, had the effect to bar and abrogate the then existing right of the defendant railroad company to take the case to the supreme court.

On May 27, 1881, Smith and Daniels made a motion, in the district court of Rice county, in the name of Mrs. Johnson, to vacate and set aside her said release and satisfaction of said judgment to the extent of $2,000, and that execution be awarded on such judgment for that amount. At the June term of the district court, 1881, this motion came on for hearing, and the defendant objected to the hearing of the motion, and to the introduction of any evidence in support thereof, upon the ground that the matters and things set forth therein were not properly determinable by the court upon motion, but should be determined only by a jury upon proper suit brought and upon issues properly joined upon petition and answer, which objection was overruled by the court, and the defendant duly excepted. The motion was then heard by the court, without a jury, upon written and oral evidence; and upon such hearing the court sustained the motion, and ordered that the satisfaction of the judgment previously made and entered should be vacated and set aside to the amount of $2,000, and that execution for that amount, and for costs, be awarded against the railroad company; to which order of the court the defendant duly excepted, and then moved for a new trial and a rehearing, which motion for a new trial and rehearing was overruled, to which ruling the defendant again excepted. The defendant then made a case for the supreme court, which case was duly served, settled, signed and authenticated, and the defendant now, as plaintiff

in error, brings the case to this court, and asks that the said order of the district court be vacated and reversed.

There are many questions involved in this case, some of which are difficult to be determined, though many of them we think are easy of solution.

That Mrs. Johnson's judgment was valid and binding as against the railroad company up to the time when she and the railroad company made their settlement, we think there can be no question; for the judgment was rendered by a court of competent jurisdiction, which at the time had jurisdiction of all the parties and of the subject-matter of the action; and the judgment remained valid and unsatisfied and unreversed up to the time when such settlement was made. No champertous contract on the part of Mrs. Johnson and her attorneys could have the effect to destroy *Mrs. Johnson's right* to prosecute the action to judgment, and to enforce such judgment against the railroad company. (*Allison v. C. & N. W. Rld. Co.* 42 Iowa, 275; *Courtright v. Burns,* 14 Cent. Law Jour. 89.) Also, except for the interest which Smith and Daniels are supposed to have had in Mrs. Johnson's claim and judgment against the railroad company, she and the railroad company had the incontrovertible right at all times to settle and compromise all their disputes, and finally to have the judgment rendered between them released, satisfied and discharged, and wholly annulled, and to do so in the very manner in which, and for the very consideration for which, all these things were attempted to be done by them. This we think necessarily follows from the decisions heretofore made by this court in the cases of *Walrath v. Walrath,* 27 Kas. 395, 399, and *Clay v. Hoysradt,* 8 Kas. 74. See also *Read v. Hibbard,* 6 Wis. 175. The question then arises: Could Mrs. Johnson and the railroad company so settle their affairs and so release, satisfy and discharge said judgment, that the settlement and discharge would be valid and binding upon all parties, including Smith and Daniels, notwithstanding the supposed interest which Smith and Daniels

claimed to have in the judgment? This question involves many others: Was the original contract between Mrs. Johnson and Smith and Daniels champertous and void? And if so, did it render the subsequent contract between them, assigning an interest of $2,000 in the judgment to Smith and Daniels, void? Or was this subsequent contract itself champertous and void? Can the railroad company raise these questions of champerty as against Smith and Daniels? and can it do so in the manner in which it attempted to do so in the present case? Can a judgment be divided, and a portion thereof be assigned to a third person, and the other portion be retained by the judgment creditor? Can this be done, either with or without the consent of the judgment debtor? Had the railroad company, at the time it settled with Mrs. Johnson and at the time the release of the judgment was made and entered, any notice of the assignment of the $2,000 interest in the judgment to Smith and Daniels? Is a notice, merely in parol, sufficient in such a case, or must the notice be in writing? And did the railroad company ever consent to, or ratify, any such assignment?

The question whether the railroad company had any notice of the assignment by Mrs. Johnson to Smith and Daniels, was at the time of the hearing of the motion, and still is a disputed question of fact. The question, however, was submitted to the court below principally upon oral testimony; and this testimony was very conflicting and so evenly balanced as to make it very difficult to determine upon which side the preponderance existed; and the court below found in favor of Smith and Daniels, and against the railroad company; and therefore we must now hold, for the purposes of the case, that the railroad company had notice of the assignment. This supposed notice was given some time after the assignment was made, and at most, was given only in parol; and therefore the further question arises: Is a notice in parol sufficient in such a case?

It would, perhaps, be proper here to state that Smith and Daniels do not claim to have, or to be entitled to any attor-

15 — 29 KAS.

neys' lien in the case; and therefore the question as to what kind of notice should be given in order to enforce an attorney's lien, does not enter into this case. Smith and Daniels rely simply and solely upon the assignment made by Mrs. Johnson to them of the $2,000 interest in the judgment, and upon the knowledge which it is claimed the railroad company had of such assignment, and of the supposed assent which it is claimed the railroad company gave to such assignment. There is no sufficient evidence, however, upon which to found any just supposition that the railroad company ever assented to such assignment in any such manner as to make it binding upon the company, if such assent were at all necessary to make it binding upon the company. For the purposes of the case, we must suppose that the railroad company had knowledge of the assignment after it was made; and Smith and Daniels testified that one of the defendant's attorneys said to them at one or more times, that he would give them $2,500 to settle the judgment with Mrs. Johnson; and that they could thereby make $2,000 clear; that they told him that they had an interest in the judgment; that he said that he understood that, that it was all right, and that he did not care who got the $2,500; that he would just as soon give the money to Smith and Daniels as to Mrs. Johnson; and asked if they would take $1,600 for their interest. But there was no evidence introduced tending to show that the railroad company, or any of its attorneys or agents, ever assented to the judgment itself or to any portion thereof, or ever agreed to pay anything thereon, except by way of settlement and compromise. At the time when this conversation occurred, the railroad company was preparing to take the case to the supreme court, and did not abandon the intention of doing so until after the settlement was made with Mrs. Johnson. There is still another question involved in this case; back and behind all the foregoing questions, there still exists the question: Did the court below have jurisdiction to hear and determine all the questions involved in the controversy between Smith and Daniels on the one side, and the railroad company on the

other, against the consent of the railroad company, upon nothing but a bare, simple motion? Upon the side of the plaintiff in error, see *McDonald v. Falvey*, 18 Wis. 571; and on the side of the defendant in error, see *Wilson v. Stilwell*, 14 Ohio St. 464; *Laughlin v. Fairbanks*, 8 Mo. 367.

It must be remembered, however, that Smith and Daniels were not parties to this judgment, and that the entire judgment was not assigned to them; hence authorities holding that a *party* to the judgment, or an assignee of the *entire* judgment, may have an erroneous satisfaction of the judgment set aside and vacated on motion, have but little application to this case. But passing over all other questions for the present and to the main and principal question — the one that involves the merits of the case — was the original contract, entered into between Mrs. Johnson and Smith and Daniels, champertous and void? We think this question must necessarily be answered in the affirmative.

1. Contract, champertous and void.

It has every element of champerty in it. It was prosecuted for a portion of the expected judgment, and for no other consideration; and Smith and Daniels agreed to pay all the costs and expenses necessary to be paid in such prosecution. This makes the contract unquestionably champertous. (*Boardman v. Thompson*, 25 Iowa, 487; *Adye v. Hanna*, 47 Iowa, 264; *Martin v. Clarke*, 8 R. I. 389; same case, 5 Am. Rep. 586; *Low v. Hutchinson*, 37 Me. 196; *Weakly v. Hall*, 13 Ohio, 167; *Scobey v. Ross*, 13 Ind. 117; *Coquillard v. Beargs*, 21 Ind. 479; *Lafferty v. Jelly*, 22 Ind. 471; *Greenman v. Cohee*, 61 Ind. 201; *Duke v. Harper*, 66 Mo. 51; *Moody v. Harper*, 38 Miss. 601; *Copley v. Lambeth*, 1 La. An. 316; 7 Wait's Actions and Defenses, ch. 31, art. 3, pp. 73 to 76.)

Authorities may be found, holding that a contract between an attorney and his client for a purely contingent fee, or a contract of purchase and sale between an attorney and his client of an interest in tangible property adversely claimed, or adversely held by some third person, which property is then, or is likely to be, the subject of litigation, is not a

champertous contract; but such authorities have no application to this case. For the purposes of this case we shall assume that such authorities are correct, and that such contracts are not champertous. The contract in the present case was that the attorneys should commence and prosecute the present action, at their own cost and expense, and for no other consideration than merely a portion of the judgment to be recovered; and the assignment in the present case was simply a reducing to writing the terms of the original champertous contract. With reference to this contract and the assignment, Mr. Daniels testified as follows:

"*Question:* State the contract you and Smith made with Mrs. Johnson, in regard to your interest in this judgment? *Answer:* The contract was that we should take the case and pay all the expenses of the suit, and give her either $1,500 or one-half of the judgment.

"Q. You were to attend to the litigation and pay all the expenses of the suit? A. Yes, sir.

"Q. All other attorneys in the case you were to pay? A. Yes, sir.

"Q. If there were any other attorneys employed in all that time, all expenses were to be paid by you and Smith? A. Yes, sir.

"Q. This instrument (the assignment) was simply carrying this out? A. Yes, sir; it was made the 22d day of March.

"Q. Simply making it in writing? A. Yes, sir. The contract was made long before.

"Q. But not reduced to writing? A. No, sir. We went and asked her how she understood the contract.

"Q. Was that $500 (mentioned as a part consideration for the assignment) ever paid? A. We did not pay that amount at that time.

"Q. That was simply inserted? A. We had paid a good deal.

"Q. That was simply to cover what the expense of litigation had been to you? A. I don't know how much we had paid at the time.

"Q. You don't mean that you paid her that $500, in money? A. No, sir."

The assignment was for no other or additional consideration than the original champertous contract, and the services

rendered and the money expended under and in pursuance of such original champertous contract; and the relations between Mrs. Johnson and Smith and Daniels were therefore no better and no worse after the assignment was made than they were before. The assignment was therefore like the original champertous contract, simply champertous and void; and Mrs. Johnson had at all times an absolute right to treat it as champertous and void. She had the right to collect the entire judgment, unless the railroad company took the case to the supreme court to have the judgment reversed, or she had the right to compromise and settle all her disputes with the railroad company, and to release and discharge the entire judgment, as she did. She in fact had an absolute and unqualified right to do as she pleased with the judgment, and this notwithstanding the champertous claim of Smith and Daniels to a portion of the judgment. The mere fact that both she and the railroad company had knowledge of the assignment could not affect her right to dispose of the judgment as she pleased, and to whom she pleased; and Smith and Daniels had no legal right to interpose any objection, or to raise any question, or to make any complaint with reference to any disposition which she might make of the judgment; and this being so, it necessarily follows that after the railroad company settled and compromised all its disputes with Mrs. Johnson, and after obtaining a full and complete release and discharge of the judgment, it also had the right, the same as Mrs. Johnson had, to treat the assignment to Smith and Daniels as a nullity. Suppose that Mrs. Johnson had enforced the collection of every cent of her judgment—and the champertous contract between herself and her attorneys would not have prevented her from doing so—then could her attorneys collect $2,000 more from the defendant? After she had collected the whole of her judgment, would not the defendant be released? And if so, why could she not compromise the matter and take a portion of the judgment? and certainly so while the judgment had not yet become an absolute finality? We have already stated that, as

against the rights of Mrs. Johnson, the railroad company had no right to set up as a defense the champertous contract between herself and her attorneys, for she, at all times and on all occasions, had the right to treat the champertous contract as null and void, and to recover on her own account the whole of her claim; but, as against Mrs. Johnson, the railroad company had and now has the right to interpose the compromise and settlement and the release and discharge of the judgment, as a full and complete defense to all claims which she might at any time set up against the railroad company. There is no pretense upon the evidence that any fraud was practiced on Mrs. Johnson in procuring the compromise, or settlement, or discharge, or release of the judgment. She had full knowlege of all the facts, and with such knowledge voluntarily made such compromise and settlement and release and discharge; and this, at a time when the judgment had not yet, from lapse of time or from any other cause, become absolutely final, but was still subject to be taken to the supreme court for further adjudication. Hence, although the railroad company cannot, as against Mrs. Johnson, interpose the defense of champerty, yet it can, as against her, interpose the defense that all matters of difference between them have been legally compromised and settled, and the judgment absolutely and wholly discharged. But, as against Smith and Daniels, we think the railroad company can interpose the defense of champerty. They are attempting. to *enforce* the champertous contract, and not merely to *ignore* it, as Mrs. Johnson has done, and as she would do, in a contest between her and the railroad company, provided the railroad company had attempted to set up such a defense as against her. Probably they could not *enforce* their champertous contract anywhere or against any person or corporation; but they certainly cannot enforce it against the defendant, under the present circumstances. Mrs. Johnson we think had the unquestionable right to treat the contract between herself and her attorneys as champertous and void; and the railroad company, by compromising and settling all their disputes with

her and obtaining a release and discharge of the judgment from her, has succeeded to all her rights. If she had the right to set up the defense of champerty as against Smith and Daniels, then the railroad company, which has succeeded to her rights, undoubtedly has the same right. But probably Smith and Daniels could not *enforce* their champertous contract against any person or in any proceeding. Smith and Daniels, in their brief, have suggested that champerty must be pleaded. This is probably generally true, though several courts have held otherwise: *Greenman v. Cohee*, 61 Ind. 201; *Webb v. Armstrong*, 5 Humph. (Tenn.) 379; *Morrison v. Deaderick*, 10 Humph. 342; *Barker v. Barker*, 14 Wis. 131, 143. In the present case, however, there was no fair opportunity for setting up the defense in any formal pleading. Smith and Daniels are attempting to enforce their claim by a mere motion; and it is very rare that an answer in the nature of a pleading is allowed to be filed to a mere motion; but every defense that may be allowed in the particular case, is usually allowed as against the motion, without the adverse party's filing any pleading. Probably Smith and Daniels should have prosecuted their claim by a regular action; and then formal pleadings would necessarily have been required from every party who wished to set up any cause of action or any defense. But they did not choose to prosecute their claim by the commencement of a formal action, but chose rather to prosecute the same by a mere motion, and in the name of Mrs. Johnson; and hence they had no right to require the defendant to file a formal answer to their motion. We think the defendant had the right to interpose the defense of champerty in the manner in which it did in the present case.

The plaintiff in error, defendant below, raises the further question that a judgment cannot be so divided that a portion thereof may be assigned to a third person, and the other portion retained by the judgment creditor; and cites, as authority therefor: *Love v. Fairfield*, 13 Mo. 300; *Mandeville v. Welch*, 18 U. S. (5 Wheat.) 286; and Freeman on Judgments, § 424. We suppose that a portion of a judgment

cannot be assigned at law, but that it may ·be assigned in equity; or, in other words, we suppose that a portion of a judgment cannot be assigned so as to be enforced in a mere legal proceeding, but that it can be assigned so as to be enforced in equity wherever it is equitable that the same shall be enforced. Whether Smith's and Daniels's motion in the name of Mrs. Johnson is an equitable proceeding, it is not necessary for us now to decide.

There are some other questions involved in this case, not yet decided; but we do not think that it is necessary to decide them now.

The order of the court below sustaining the said motion will be reversed.

HORTON, C. J., concurring.

BREWER, J., dissenting.

I dissent from the opinion and judgment in this case. Whatever might have been the force of the plaintiff's release, if there had been no assignment by her of the portion of the judgment, after such assignment and after knowledge thereof by the railroad company, I think the interest of the attorneys in that judgment should be protected. It is conceded in the opinion that an assignment of a portion of the judgment can be enforced in equity whenever it is equitable that the same should be enforced; and I think in this case it is equitable that the assignment be enforced. It is clear that the attorneys paid out money and did work, and I think it equitable that they should receive compensation therefor. Prior to the release, I believe we all agree that the railroad company could not raise the question of champerty, and prior to the company's obtaining the release, the plaintiff and her attorneys had satisfactorily adjusted the amount of compensation, and she had assigned a portion of the judgment in satisfaction thereof. When all this had been done, and done with the knowledge of the company, I think its settlement with the plaintiff gave it no right to challenge that assignment. I think it highly inequitable that it should be per-

mitted to do so. Unquestionably, as I think, the plaintiff never intended that such should be the effect of her release, or that the railroad company should, in consequence thereof, be able to deprive her attorneys of all compensation.