Spear, C. J.
The controversy in this court is wholly between the Railway Company and Volkert. No other parties contested, the case in the circuit court, and the Railway Company alone brings the *367 case to this court. The essential facts are these: Muller agreed with Quatkemeyer to act as his attorney in his case against the Railway Company for one-half of any judgment which might be obtained. Before any legal interest had vested in him, Muller assigned his fees in the case to Volkert. The judgment of Quatkemeyer against the Railway Company was for $3,500, and was rendered October 4, 1893. On December 16, 1893, Quatkemeyer made an assignment in writing to Muller of a half interest in the judgment, and on the same day and upon the same piece of paper, Muller made an assignment of the interest thus acquired to Volkert. The assignments respectively are as follows:
“Cincinnati, O., Dec. 16, 1893.
“In consideration of services performed by Herman Muller, as an attorney at law in behalf of Frederick Quatkemeyer against the P., C., C. & St. L. Ry. Co., in a suit pending in the superior court of Cincinnati, and in consideration of services still to be performed by him until the final determination of said cause in the circuit court or supreme court, which services said Muller agrees to perform as part of the consideration hereof, I hereby assign, transfer and set over to him one-half of the judgment recovered against said Railway Company in said superior court, case No. —.
F. Quatkemeyer.”
Attest: Albert Bettinger.
“For value received I hereoy assign, transfer and set over to Phillip Volkert all my right, title and interest in and to the above assignment of one-half of judgmentin case of Quatkemeyer v. P, C., C. d¿ /St. L. By. Oo. Herman Muller.”
Attest: Albert Bettinger.
*368 The assignment from Muller to Volkert was with Quatkemeyer’s knowledge and full consent. The legal services named in the assignment to be performed by Muller, in the prosecution of the claim against the Railway Company, were performed in part by Muller, and in part by other attorneys, but to the entire satisfaction of Quatkemeyer.
On January 5, 1894, both assignments were entered on the appearance docket in the case of Quatkemeyer against the Railway Company, and were deposited with the clerk of the court. On August 1, 1894, the Railway Company received actual knowledge of these assignments.
The Railway Company prosecuted error to the circuit court and there, on August 4,1894, the judgment of the court of common pleas was affirmed.
The Railway Company then prosecutederror from the judgment of the circuit court to this court and on January 29, 1895, the judgment of the circuit court was affirmed. On the same day, a written agreement was made and signed by the parties, Quatkemeyer and the Railway Company, by which the Company and Quatkemeyer undertook to compromise the case; to settle it in all of its aspects for one thousand dollars in case the judgment of the circuit court should be reversed, and to settle it for two thousand dollars, so far as the parties to this agreement could accomplish that end, if the judgment should be affirmed. This agreement • was made without the knowledge of Volkert, although with full knowledge on the part of the Railway Company, as well as of Quatkemeyer, of the existing rights of Volkert, whatever they might be.
The plaintiff in error rests its contention on three propositions:
*369 1. The Quatkemeyer judgment was a unit, and could not be assigned in part without the judgment debtor’s consent.
2. His agreement with his attorney was champertous, and therefore void.
3. He could not, by any act of his, impair the judgment debtor’s right to compromise; and persons claiming through him by assignment are bound by the settlement which he has made.
I. It is conceded that an assignment of a part of a debt cannot be enforced at law unless assented to by the debtor. This principle is held in Mandeville v. Welch, 5 Wheat., 277, opinion by Mr. Justice Story. The reason is that it might subject the debtor to a multiplicity of suits at the instance of each assignee of separate portions of the debt; and as the original creditor would be no party to those suits, and might thereafter, upon an action for the whole debt, deny the assignments, it would be impossible in a court of law, to protect the rights of all the parties. The principle is universally recognized, and has been applied in many adjudicated cases.
But the question here is not whether such an assignment can be recognized and enforced at law, but whether it can be made the basis of a proceeding- in equity. The supreme court of Missouri in Love v. Fairfield, 13 Mo., 300, held, apparently upon the authority of Mandeville v. Welch, that such assignments are not enforceable either at law or in equity, and the rule seems to have been followed by that court in Burnett v. Crandall, 63 Mo., 410, in Beardslee v. Morgner, 73 Mo., 22, and in Loomis v. Robinson, 76 Mo., 488. Our research has not discovered any other case in which the *370 rule first cited is held to apply in a proceeding in equity. The case below was a proceeding in equity. It was brought to subject the proceeds of a judgment against the Railway Company, upon which admittedly there was a large sum due, to the claims of the respective parties, and was treated from the inception to the conclusion of the case, not only by the claimants, as a proceeding of that character, but by the Railway Company itself, as shown by the fact of its appeal of the case from the court of common pleas to the circuit court. The objection that the debtor would be inconvenienced by partial assignments, while apparent if he could be pursued by each assignee separately upon his portion of the claim, is entirely wanting when the parties may all be brought before the court in one proceeding and their rights all settled by one decree. The principle suggested will be found present in many of our different kinds of legal proceedings, as for instance the process of attachment and garnishment, and it could hardly be said that the policy of the law which would permit a debtor to be subjected to the inconvenience of garnishee process would not with equal propriety authorize an assignment of that which might be reached by attachment. Again, the same principle applies in a stronger sense to the remedy given to laborers and material men under our mechanic’s lien laws. There the amount due from the owner to the principal contractor may be reached by the subcontractors who have contributed to the common purpose, to-wit: the erection of the structure, by either their labor or their material. Other instances might easily by cited, but it cannot be necessary. The rule announced by Mr. Justice Story in Mandeville v. Welch, was given in a suit *371 at law; lie did not intend to be understood that it would apply to a suit in equity, and this is apparent from his remarks in II. Story’s Equity Jurisprudence, section 1044, to the purport following:
“But,” (speaking of the effect of an assignment) ‘ ‘in cases of this sort the transaction will have a very different operation in equity. Thus for instance if A, having a debt due to him from B, should order it to be paid to C, the order would amount in equity to an assignment of the debt and would be enforced in equity although the debtor had not assented thereto. The same principle would apply to the case of an assignment of part of a debt. In each case a trust would be created in favor of the equitable assignee on the fund, and would constitute an equitable lien upon it.”
By other of the authorities such transfer is said to create an interest in the fund in the nature of an equitable property; by others it is denominated an equitable assignment. But, whatever term is applied to it by way of description, the result reached is to give to the assignee a property right in the thing assigned, a right which is cognizable by and enforceable in a court of equity.
Authorities in support of the proposition here advanced are so abundant that one is at a loss which to select. The following will be found, as we think, conclusive upon the subject: Supt., etc. v. Heath, 15 N. J. E., 22; Field v. The Mayor, 6 N. Y., 179; The People v. Comptroller, 77 N. Y., 45; Whittemore, Admr., v. Oil Co., 124 N. Y., 565; Grain v. Aldrich, 38 Cal., 514; Bank v. Kimberlands, 16 W. Va., 555; Phillips v. Edsall, 127 Ill., 535; Bank v. Yardley, 165 U. S., 634; Price v. The Elmbank, 72 Fed. Rep., 610; Exchange Bank v. McLoon, 73 Me., 498; 2 Freeman on Judgments, section 426. *372 See also, Stanbery v. Smythe, 13 Ohio St., 501; Gamble v. Carlisle, 3 N. P., 279, opinion by Smith, J., and. authorities there cited.
II. It is stated by text writers, and the proposition is accepted by a number of decisions, that there are three elements to constitute the offense of champerty: “1st. And this is common to all forms of maintenance, the absence of any other interest in the case on the part of the champertor than that arising from his champertous contract. 2d. The assumption by the champertor of all expenses in conducting the case. 3d. A previous agreement for his remuneration from the proceeds of the suit.” It is believed that the above is as severe as any of the tests given in the books. The proposition is stated in a recent ease (Ry. Co. v. Brady, 39 Neb., 27) in these words: “In order to constitute champerty the contract between the attorney and his client must not only provide that the attorney shall have a part of the money or thing received in the action, but it must also provide that the attorney shall, at his own expense, support the suit, be responsible for the costs, and take all the risks of the litigation.” If this rule were applied, it would not destroy the contract between Muller and Quatkemeyer, for Muller made no agreement with respect to any of the expenses of the suit. It is believed that this contract is not condemned by any of the cases in Ohio bearing upon the subject, and certainly it is not objectionable if tested either by the syllabus or by the reasoning of the opinion in the reaent case of Reece v. Kyle, 49 Ohio State, 475. The services had been rendered at the time of the assignment to the extent of the recovery of the judgment against the Company. That judgment was a lien upon the *373 Company’s property. Any further effort by the Company to avoid liability would be in the nature of a new action wherein the Company would be the plaintiff and Quatkemeyer the defendant. The judgment, therefore, was an ascertained debt then due from the Company to Quatkemeyer. Quatkemeyer owed Muller and by his arrangement with him .was equitably bound to recompense him from the proceeds of the judgment. That is all that he undertook to do by the assignment. Quatkemeyer, it must be borne in mind, is not here contesting the fairness of his agreement with Muller, nor is anybody pretending that the contract between Muller and Quatkemeyer was one which was inequitable in itself. It is more than probable that compensation to the attorney in the case could not be made except from the proceeds of the judgment, and there is no rule of law or of common fairness between man and man, which makes it improper for an attorney to be paid for his labor and skill in prosecuting to final judgment a claim against a railway company for personal injuries to a party, from the amount recovered. Nor can we assume, without proof, that the amount stipulated for was not fairly earned in the ease. It is common knowledge that suits of this character involve elements of marked uncertainty, often beyond the ordinary; that usually they are defended by lawyers of exceptional ability; and that it is usual, and hence to be expected, that the company will do, as it did in this ease, carry the controversy to the last tribunal which may have cognizance of it. The attorney, like any other laborer, is worthy of his hire. Of course we are speaking of meritorious and useful legal services by lawyers, and not of pretended or fictitious services by shysters. We do not think *374 the contract was champertous. Whether, if it were, the Railway Company could take advantage of it, we need not inquire.
III. The debtor’s right to compromise. The right of the debtor to compromise with his creditor is not disputed, but it is not a right of so high character as to override every other right which courts respect. The books are full of cases holding that where a debt has been assigned, and a debtor has knowledge of the assignment, any attempt to settle the case with the assignor and ignore the claims of the assignee, will be held to be futile so far as the rights of the latter are concerned. Harris County v. Campbell, 2 Am. St. Rep., 472, and note; Field v. The Mayor, supra; Brill v. Tuttle, 81 N. Y., 454; McDaniel v. Maxwell, 21 Ore., 202; Schilling v. Mullen, 55 Minn., 122; 3 Pom. Eq., section 1280; Hughes v. Trahern, 64 Ill., 48; Ullman v. Kline, 87 Ill., 268; Stoddard, Treas., v. Benton, 6 Col., 508. This necessarily follows if it be once determined that the assignment, and the contract which supports it, are valid. We have found that the contract between Quatkemeyer and Muller is valid, and that, in equity, such an assignment, although of but a portion of the claim, will be maintained. It thus appears that the right of a debtor to compromise, means only that his right to compromise will be preserved as respects his dealing with the real parties in interest of whose claims he has knowledge; and if this be so, the release by one of the parties in interest cannot affect the portion of the debt belonging to another. As held in Upjohn v. Ewing, 2 Ohio St., 13: “One or more of several joint creditors between whom no partnership exists, cannot release the common *375 debtor, so as to conclude their co-creditors who do not assent to such release.”
It is urged that a denial of the right of the Company to compromise the judgment with Quatkemeyer alone would be inconsistent with the principle announced in Weakly for the use of Bell v. Hall, 13 Ohio, 168, and especially with the spirit of the opinion in that case and in Key v. Vattier, 1 Ohio Rep., 132. It is to be borne in mind, however, that those cases were decided at a time when the trend of judicial opinion and utterance on the general subject was essentially different from the current of belief and opinion in later times. Also, that in each of those cases the court was dealing with a contract which they had found to be void on the ground of champerty, the one because the contract engaged the assignee of the chose in action (Bell) to employ counsel, to prosecute the action in the name of Weakly for his use, to advance money, procure the necessary bail for the prosecution of the suit, reimburse himself from the proceeds, and receive a portion of the avails for his compensation, thus giving to Bell entire control of the case, although Weakly continued to have an interest in the subject matter; and the other because the contract in terms prevented the party from compromising and settling the matters in controversy without the concurrence of the attorney. We have already found that the contract in the present ease is not open to either of these objections, and that the thing in part assigned was a final judgment.
The declaration of the opinion in Weakly v. Hall, is: ‘ ‘That the law of Ohio will tolerate no lien in or out of the profession, as a general rule, which will prevent litigants from compromising, or settling their controversies, or which, in its tendencies en *376 courages, promotes, or extends litigation.” But the point really decided was that there could be no recovery against Hall, in the interest of Bell (the assignee of the chose in action) in any forum, because of the champertous character of the contract upon which Bell, in the name of Weakly, was undertaking to obtain judgment, and that Weakly, notwithstanding the contract with Bell, had power to release the debt, and the release was therefore effectual. The language quoted is but a dictum at best, is announced only as a general rule, and should not be taken literally, but should be restrained in its application to the precise matter in hand. It is, in legal effect, saying that the law will tolerate no lien growing out of such a contract. It illustrates the temper of the judge, but is not a binding declaration of law farther than is indicated above.
A hasty reading of one of the head-notes (by the reporter) might seem to suggest a holding that a release by one of several tenants in common of a chose in action, will in law, discharge the cause of action. But this is probably not the meaning of the paragraph, and it certainly was not intended by the court. The opinion is to the effect that there not being an absolute transfer of the entire interest in the chose in action to Bell, Weakly and Bell were, as between themselves, tenants in common, each having a distinct interest. There was, therefore, something which Hall’s release could operate upon and discharge, and Bell could no longer pursue Hall at law, in Weakly’s name for Weakly’s rights were discharged by the release. He could not sue at law in his own name, because the chose in action is not negotiable, and his remedy, if any, must be in equity. A clear recognition of the proposition *377 that had Bell’s right been acquired by a contract not open to the taint of champerty or other weakness, he could have enforced his claim on the equity side of the court.
The duty of the court to protect the interest of an assignee of a chose in action is elsewhere in the opinion recognized in these words: “It is by no means our intention to shake the well-established principle that a court of law will protect the interest of the tona fide assignee of a chose in action, after notice to the debtor of the assignment. The rule is convenient, and necessary in the administration of justice, to secure parties against fraud and circumvention.” How could parties be secured against “circumvention” if the rule were established that, although a judgment-debtor have full knowledge of an assignment of part of a judgment to a third person, yet he may, without the knowledge and behind the back of that assignee, negotiate an alleged compromise with the original creditor which will discharge the entire debt? It is confidently submitted that neither by any process of right reasoning, nor upon any respectable authority, can such a proposition be maintained.
It results in this case that the Railway Company, while it had a full right to compromise, was simply required to deal with all parties in interest, including those holding a valid property interest in the judgment and entitled to a portion of the proceeds. It is- not, therefore, any hardship upon the Company to say that it shalL not have, as against Volkert, the advantage of a contract surreptitiously entered into with Quatkemeyer, having the effect to prevent the attorneys who had been instrumental in recovering the judgment from receiving the benefit of their assignment. The Company simply *378 failed, to deal with the right parties. The effect of their ag’reement was to compromise one-half of the judgment, leaving the interest of Volkert intact.

Judgment affirmed.